Jose Luis
**CASTILLO–FUENTES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 502–83.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 22, 1986.

Rehearing Denied April 16, 1986.

Dennis R. Martin, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Charles Estee, Bill Harris and Alan E. Battaglia, Asst. Dist. Attys., Roy R. Barrera, Jr., Sp. Pros., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted of murder. See V.T.C.A. Penal Code, § 19.02. The jury assessed punishment at thirty years confinement in the Texas Department of Corrections. On appeal to the San Antonio Court of Appeals, appellant's conviction was reversed in an unpublished opinion. *Castillo-Fuentes v. State* (Tex.App.—San Antonio, No. 04–82–00547–CR, delivered May 25, 1983). We granted the State's

petition for discretionary review in order to consider the court of appeals' holding that there was fundamental error in the jury charge. We affirm the court of appeals' ruling.

The facts leading to the death of Maria del Carmen Proscelle follow. Appellant and the deceased had been living together as man and wife for approximately 3 years, and had a child, Rosalinda Proscelle. The deceased had previously been married, and Proscelle was her name from the prior marriage. The deceased gave the child the name Proscelle so that she could receive Social Security benefits, to which appellant initially agreed. The couple (appellant and deceased) had been separated for a month and a half when the fatal shooting incident occurred. During the separation, appellant made child support payments to deceased. He became increasingly irritated that the child did not carry his name.

On the day of the incident, appellant was to have gone to play pool in San Antonio with friends. He and the deceased had discussed, the evening before, his plans to go to San Antonio. She did not want appellant to go, preferring that he visit with her and their child. When appellant arrived at the group's pre-arranged meeting place, she was waiting for him.

She signalled to him from across the parking lot, and he approached her. They began arguing about the pool trip, and appellant went with the deceased to her home. Once inside the house, the arguing continued, first about her jealousy over another woman and then about the last name of their child. Appellant testified, "[s]he started to threaten me. Oh, let's say [she] wanted to slap me. And what I would do is just push her back. At one time she came to fall on a heater that was

there." Appellant continued, "[s]he was very upset and she told me she was going to kill me." The deceased then reached for a rifle that was on top of a china closet. In response appellant also reached for the rifle, and got it before she did.

Appellant testified at trial that the deceased cursed at appellant and cursed his mother, and said, "[i]f I don't kill you my brother Mario will." On questioning by the defense counsel the following testimony took place:

"Q. Now, what effect, if any, did those words and those acts have on you, sir and acts [sic]?

"A. Like what?

"Q. Did you feel anything or react in any way to those words and those acts?

"A. Yes. I was very angered because why did she curse my mother.

"Q. And what happened then?

"A. Then she started running to call for Mario."

.     .     .     .     .

"A. I was very angered because she was going to kill me and Mario was going to kill me."

It was at this point that appellant fired a shot at Maria Del Carmen. He testified that she fell to the ground after the first shot was fired. He fired two more shots towards her "because I was angry. I didn't know what I was doing ... I don't know whether I did hit her or not."

The trial court held that this evidence raised the issue of voluntary manslaughter under V.T.C.A. Penal Code, § 19.04.[1] Both the State and appellant agree that the appellant's testimony raised the issue of sud-

---

1. V.T.C.A. Penal Code, § 19.04 reads in part: "(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.
(b) 'Sudden passion' means passion directly caused by and arising out of provocation by

the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.
(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

den passion, and that the trial court was correct to charge the jury on the law of voluntary manslaughter. The court's charge instructed the jury in pertinent part as follows:

"3.

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Jose Luis Castillo Fuentes, did, in Bexar County, Texas, on or about February 16, 1982, intentionally or knowingly cause the death of an individual, to-wit: Marie Del Carmen Proscelle, by shooting the said Marie Del Carmen Proscelle with a rifle, you will find the defendant guilty of murder.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty of murder and you will next consider whether the defendant is guilty of voluntary manslaughter."

In *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1984), this Court held, "the burden of proving lack of sudden passion must be placed upon the prosecution, [and] this burden must be so placed in the paragraph of the charge applying the law of murder to the facts of the case." *Id.* at 751. We further stated that constructing a charge in this manner will avoid the "likelihood that a jury would affirmatively answer the murder paragraph, never having considered the defensive issue of sudden passion which would reduce the offense of murder to the lesser included offense of voluntary manslaughter." *Id.* at 752. The jury charge above is precisely the type of charge condemned in *Cobarrubio*, supra, and the court of appeals concluded that the charge presented reversible error on that basis.

The State argues that *Cobarrubio*, supra, was incorrectly decided, along with *Jenkins v. State* (Tex.Cr.App. No. 64,000 delivered Feb. 16, 1983), a similar case. It maintains further that the court of appeals incorrectly applied *Cobarrubio*, supra, and *Jenkins*, supra. Although we affirm the court of appeals, some clarification of "*Co-barrubio* error" in light of recent decisions is necessary.

Since the court of appeals' opinion was delivered in the instant case, we have re-evaluated the doctrine of fundamental error in a court's charge. See *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985) and *Lawrence v. State*, 700 S.W.2d 208 (Tex.Cr.App.1985). We must look to this Court's ruling in *Almanza*, supra, to determine the nature of the fundamental error found by the court of appeals. We concluded in *Almanza*, supra, that Article 36.-19, V.A.A.C.P. contains the standards for both fundamental error (which does not require preservation) and ordinary (properly preserved) error. The error in this case was not properly preserved by objection. *Almanza* states that, "if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'— in short 'egregious harm.'" *Id.* at 171.

To determine the egregiousness of the harm to appellant, we undertake a thorough evidentiary review, following *Almanza*, supra:

" 'But in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it at all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory? These are all important matters to be con-

sidered in passing upon the [degree of harm] in the omission or error....'" *Id.* at 173–174, quoting *Davis v. State,* 28 Tex.Ct.App. 542, 13 S.W. 994, 995 (1890), *writ of error dism'd,* 139 U.S. 651, 11 S.Ct. 675, 35 L.Ed. 300 (1891).

The problem of unpreserved *Cobarrubio* error was presented recently in *Lawrence,* supra. On the facts of that case, we held that, although voluntary manslaughter was sufficiently "raised" by the evidence to justify a jury charge on the issue, the voluntary manslaughter theory was incidental to the primary theory of self-defense. "We conclude that when a review of the entire record shows, as here, that voluntary manslaughter is an incidental theory of the defense, the subtle deletion of the State's burden of proof on the absence of sudden passion in the murder application paragraph cannot realistically be construed to inure to the defendant's egregious harm." *Id.,* 700 S.W.2d at 213. *Cobarrubio* error in such a context did not rise to the level of fundamental, reversible error under *Almanza,* supra.

■ Conversely, a review of the record in the instant case shows voluntary manslaughter as the primary, indeed the only theory proffered by the defense. In closing arguments for the defense, counsel informed the jury, as follows:

"... where there is a murder under circumstances that show that this murder resulted from immediate passion and that that immediate passion was caused by the provocation of the victim, and that further that this constituted adequate cause, then by law that is voluntary manslaughter.... She made an effort to obtain that rifle. Common sense and logic would say for what? To inspect it? No. She was angry. She was enraged. Is it logical to conclude that his anger and his rage was somewhere in the same degree? And was this such a degree as to have rendered him incapable of cool reflection? ... Yet that night something occurred and that occurrence constitutes, I believe, under the law and evidence, voluntary manslaughter."

The bulk of defense counsel's closing argument, and of the defense evidence itself, went to the issue of sudden passion. In contrast to the facts in *Lawrence,* supra, here the deletion of the sudden passion language from the murder application paragraph *can* realistically be construed to inure to the defendant's egregious harm.

In an attempt to define fundamental error, this Court has suggested that the "fair and impartial trial" phraseology serves as an admonition that fundamental error must involve egregious harm at trial. *Almanza,* supra at 172. Other verbal formulations are also used: fundamental error must "go to the very basis of the case," deprive the accused of a "valuable right," or "vitally affect his defensive theory." *Id.,* citations omitted. Each of these criteria yields a determination of fundamental error in the case at bar. Beyond being deprived of a "valuable right" to a "fair and impartial trial," the error here does "go to the very basis of the case," and certainly "vitally affects his defensive theory," which is solely one of voluntary manslaughter.

During jury deliberation of the case before us, it is instructive to note that the jury sent the following note to the court:

"Are the charges of murder and voluntary manslaughter to be considered independently or must the charge of murder be first deliberated as directed before proceeding to deliberation of voluntary manslaughter?"

The court replied, "You are directed to Paragraph No. 3, in the charge. Please continue your deliberations."

■ This exchange appears to complicate our fundamental error assessment. It can be interpreted to mean that the jury did indeed consider the entire charge, since they obviously were considering the possibility of voluntary manslaughter as well as a conviction for murder. Therefore, it could be argued that there could not possibly be "a decided likelihood that a jury would affirmatively answer the murder paragraph, never having considered the defensive issue of sudden passion." *Cobarrubio,* supra at 752. This jury obviously

did consider the defensive issue of sudden passion in their deliberations. The jury's question strikingly shows, however, in a non-theoretical, real-life situation, the *Cobarrubio* problem: it shows that this jury was confused and misled by the possibility of ending their deliberations with the murder application paragraph.[2]

■ The court, in directing the jury to "See paragraph 3" as a response to their confusion merely compounds the original error. Paragraph 3 *is* the erroneous portion of the charge. The court did not resolve this issue by redirecting the jury to consider the charge as originally misstated.

*Almanza,* supra at 174, directs that reversible harm to the accused must be actual, not just theoretical. Following this Court's reasoning in *Lawrence,* supra, and in light of the above exchange, we find that appellant did not receive a "fair and impartial trial," but rather a conviction on an improper charge. Because appellant's entire case turned on voluntary manslaughter, cf. *Lawrence,* supra, the harm of the improper charge was actual, not theoretical, and clearly egregious.

The judgment of the court of appeals is affirmed.

CLINTON, J., concurs in the result.

ONION, P.J., dissents.

WHITE, J., not participating.

TEAGUE, Judge, concurring.

Because I continue to subscribe to what I stated in the concurring and dissenting opinion that I filed in *Lawrence v. State,* 700 S.W.2d 157 (Tex.Cr.App.1985), I am unable to agree with the reasoning that the majority opinion uses to hold that there was only mere *State* error in the court's jury charge, but do concur in the result that it reaches, that Jose Luis Castillo-Fuentes, hereinafter referred to as the appellant, is entitled to a new trial. I agree with the result because the error of omission in the court's charge was error of *Federal* Constitutional dimension, and not mere *State* error, as the majority implicitly holds.

In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), also see *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the Supreme Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." Thus, when the issue of sudden passion is raised in a murder case, the jury must be instructed thereon, even absent a request therefor or an objection thereto. See the concurring opinion that Justice Rehnquist filed in *Mullaney v. Wilbur, supra,* in which he pointed out that no objection was made to the charge that was given in that cause.

In *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Cr.App.1984), and *Jenkins v. State,* (Tex.Cr.App., No. 64,000, February 16, 1983, still pending on State's motion for rehearing), a majority of this Court, either expressly or implicitly, subscribed in whole, and not just part, to what the Supreme Court had stated and held in *Mullaney v. Wilbur,* supra, which is contrary to what the majority opinion does in this cause.

The record reflects that the trial court first gave the jury abstract instructions on the offense of murder, see V.T.C.A., Penal Code, Section 19.02, but when it came to

---

**2.** The concurring opinion by Judge Teague intimates that our finding of reversible error is, at least in part, based upon this note from the jury. This is an incorrect interpretation of the majority opinion.

In this case, exclusion of the sudden passion jury instruction was harmful to appellant since the evidence, indeed his sole defense, raised the issue of voluntary manslaughter. Since voluntary manslaughter was not simply an incidental theory of the defense, cf. *Lawrence,* supra, we find that deletion of the instruction was egregiously harmful to appellant.

Discussion of the jury note is included only as further support for our conclusion that appellant was harmed. We do not require direct evidence of harm, such as a jury note showing that the jury was confused, to find reversible error.

the application paragraph of the charge on the offense of murder it did not properly place therein an instruction either that the State had to disprove beyond a reasonable doubt sudden passion on the part of the appellant or had to prove beyond a reasonable doubt the lack of sudden passion on the part of the appellant before it could find him guilty of the offense of murder. Under *Mullaney v. Wilbur*, supra, *Cobarrubio v. State*, and *Jenkins v. State*, this omission was clearly reversible error, notwithstanding the fact that the trial court also instructed the jury on the law of voluntary manslaughter, as well as applying the law of voluntary manslaughter to the facts of the case. I assume this occurred because, as a matter of State law, see V.T.C.A., Penal Code, Section 19.04, the offense of voluntary manslaughter has been designated a separate and distinct offense from the offense of murder.

On direct appeal, the appellant relied totally upon *Cobarrubio v. State*, supra, and *Jenkins v. State*, supra, as authority in support of his sole ground of error, to-wit: "The court erred in its charge to the jury concerning the offenses of murder and voluntary manslaughter." The State conceded in its response brief that under *Cobarrubio v. State*, supra, and *Jenkins*, supra, reversal was required. The court of appeals agreed and in an unpublished opinion ordered that the appellant's conviction be reversed. *Castillo-Fuentes v. State*, (No. 04–82–00547–Cr, May 25, 1983). Thereafter, this Court granted the State's petition for discretionary review.

The majority opinion in this cause, rather than relying totally upon this Court's majority opinions of *Cobarrubio v. State*, supra, and *Jenkins v. State*, supra, relies instead on this Court's majority opinions of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr. App.1985), and *Lawrence v. State*, 700 S.W.2d 208 (Tex.Cr.App.1985), also see *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr. App.1985), and *Moore v. State*, 694 S.W.2d 528 (Tex.Cr.App.1985), which opinions are aberrational in the sense of what this Court had stated and held in the last ten years before this Court decided those cases.

Interestingly, in its partial reliance upon *Cobarrubio v. State*, supra, the majority opinion overlooks the fact that in *Lawrence v. State*, supra, a majority of this Court expressly overruled *Cobarrubio v. State*, supra, "to the extent that *Cobarrubio v. State*, supra, held that the jury charge 'error precipitated a denial of due process of law in the most fundamental sense.'" This ruling cut the guts out of *Cobarrubio v. State*, supra. See the dissenting opinion that Judge Clinton, who not only authored that opinion for the Court but also authored *Almanza v. State*, supra, for the Court, filed in *Lawrence v. State*, supra.

The major flaw in the majority's opinion rests in its attempt to find "actual harm", as it is required to do under this Court's majority opinion of *Almanza v. State*, supra, which decision created the rules that presently govern when a charge is erroneous as a matter of *State* law. However, the issue in this cause does not concern mere State law, but instead concerns error that rises to the level of Federal Constitutional dimension, which law in this instance controls. See Article VI, *Federal Constitution*.

In the majority opinion's efforts to find "actual harm" to the appellant, it confuses apples and oranges, because you cannot have "Cobarrubio type fundamental error" and still hold that such error is harmless error. The two are simply incompatible. "Cobarrubio type fundamental error" precludes any harmless error analysis, because such error is *per se* reversible error. The majority opinion errs not only in its reasoning, but in its analysis of the issue as well, but this, too, is partly understandable in light of this Court's majority opinion of *Almanza v. State*, supra, but *Almanza* is applicable only when one is considering error in the court's charge pursuant to State law, and not Federal law. I say to the majority of this Court: When it comes to Federal Constitutional law, you cannot have it both ways; either *Almanza* must go or what is left of *Cobarrubio* must go because the two are absolutely and totally

incompatible when it comes to fundamental error that rises to the level of Federal Constitutional dimension, as the error in this cause does—because of the fact that there was evidence in this cause that the killing occurred in the heat of sudden passion arising from an adequate cause.

In its efforts to find "actual harm" to the appellant, see *Almanza v. State*, supra, the majority opinion, using a "strawman" approach, seizes upon a question that the jury sent the trial judge and the trial judge's response thereto and, after acting much like a graphologist might act, interprets the meaning of the question and the answer, and then concludes that under *Almanza v. State*, supra, actual harm has been shown. Therein lies one of the dangers of the majority opinion, which, when it comes to reasoning and analysis, is an aberration in the history of the criminal jurisprudence of this State, but nevertheless understood if one is a believer that an opinion should be "result oriented."

The majority opinion, inferentially at least, holds that there would have been no harm to the appellant if the jury had been told in the answer the trial judge gave, that in considering whether the appellant was guilty of murder or voluntary manslaughter, or no offense at all, it was permitted to consider the offenses together. However, such an inference would be intolerable under *Cobarrubio v. State*, supra, because there would still be an omission in the charge concerning the mandatory burden of proof that the State must sustain when the issue of sudden passion is raised by the evidence in a murder case.

Another major problem with the majority opinion is the fact that, at least implicitly, it refuses to accept the fact that voluntary manslaughter is *not* a lesser included offense of the offense of murder, refuses to accept the fact that it is not a defense to the offense of murder, and refuses to accept the fact that it is not in the nature of a defense to the offense of murder, which offense, by Legislative edict, is instead a separate and distinct offense from the offense of murder. See *Daniel v. State*, 668 S.W.2d 390, 395 (Tex.Cr.App.1984) (Teague, J., Concurring opinion). But see and Cf. *Bradley v. State*, 688 S.W.2d 847, 849 (Tex. Cr.App.1985); *Braudrick v. State*, 572 S.W.2d 709 (Tex.Cr.App.1978). By its very wording, it is a weird type of murder offense.

However, this Court in the past has refused to consider the offenses of murder and voluntary manslaughter as separate and distinct offenses, trying instead to make the proverbial square peg, the offense of voluntary manslaughter, fit into a round hole, the offense of murder; for example, by stating and holding that voluntary manslaughter is either a lesser included offense of murder, a defense to the offense of murder, or that it is not a lesser included offense of murder unless the evidence raises the issue of sudden passion. Cf. *Braudrick v. State*, 572 S.W.2d 709 (Tex.Cr.App.1978); *Bradley v. State*, supra.

And this is the reason why our Legislature needs to delete the offense of voluntary manslaughter from our law, and put it where it actually belongs—that it only constitutes mitigation to the offense of murder, as it previously existed under our former Penal Code.

Under our present law, even if the jury believes beyond a reasonable doubt that the accused person is guilty of the offense of murder, voluntary manslaughter is not necessarily eliminated from the case because if the murder occurred under the immediate influence of a sudden passion arising from an adequate cause that person is not guilty of the offense of murder but is only guilty of the offense of voluntary manslaughter, which is actually murder.

Furthermore, if a jury finds a person not guilty of the offense of murder, it has necessarily found him not guilty of voluntary manslaughter because murder has all of the elements of voluntary manslaughter, which by Legislative edict also constitutes the offense of murder.

However, if the issue of sudden passion is raised in a murder case, then under this Court's decisions voluntary manslaughter

**566**

may either be a defense or a lesser included offense to murder.

All of this sounds rather confusing, doesn't it? But the above should explain why the Legislature of this State needs to put voluntary manslaughter where it belongs, as mitigation of punishment for the offense of murder when the killing is found to have been committed under the influence of sudden passion arising from an adequate cause.

Nevertheless, under *Mullaney v. Wilbur*, supra, and this Court's decisions of *Cobarrubio v. State*, supra, and *Jenkins v. State*, supra, and because there is such an offense in our law as voluntary manslaughter, if the accused person is on trial for murder, and sudden passion is raised by the evidence, it is incumbent upon the trial court to place in the application paragraph of the charge that pertains to the offense of murder an instruction that before the jury can find the defendant guilty of murder beyond a reasonable doubt, the State must prove beyond a reasonable doubt, in addition to whatever else it must prove to establish the offense of murder, that there was a lack of sudden passion on the part of the accused. Otherwise, "When the defensive issue of sudden passion is deleted from the paragraph on murder and placed *only* in the voluntary manslaughter paragraph as it is here, there exists a decided likelihood that a jury would affirmatively answer the murder paragraph, never having considered the defensive issue of sudden passion ..." *Cobarrubio v. State*, supra, at 752.

Under *Mullaney v. Wilbur*, supra, *Cobarrubio v. State*, supra, and *Jenkins v. State*, supra, when sudden passion is raised in a murder case, it is *per se* reversible error, as a matter of Federal Constitutional law, for the trial court to instruct the jury as occurred in this cause.

For all of the above reasons, I only concur in the result reached by the majority opinion—that the judgment of the court of appeals should be affirmed.