**Armando Hilario RUIZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 0658–85.

Court of Criminal Appeals of Texas,
En Banc.

May 18, 1988.

Rehearing Denied June 15, 1988.

Terrence Gaiser, Houston, for appellant.

William M. Rugeley, Former Dist. Atty., San Marcos, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of murder and sentenced to life imprisonment. V.T.C.A. Penal Code, § 19.02(a)(1).

Relying on *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1983), and noting our opinion on original submission in *Jenkins v. State*, 740 S.W.2d 435 (Tex.Cr.App. 1983), the Austin Court of Appeals found unassigned fundamental error in the authorization paragraph of the trial court's instruction to the jury on murder. *Ruiz v. State*, 691 S.W.2d 90, 92 (Tex.App.—Austin 1985). It then determined that, on the facts of this case, the error was "egregiously harmful" and, therefore, denied appellant a fair and impartial trial under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr. App.1985). *Ruiz v. State*, supra, at 94. On this finding, the court reversed and remanded to the trial court for a new trial. *Id.*, at 95.

We granted the State's petition for discretionary review to determine whether such error, on the facts of this case, denied appellant a fair and impartial trial and hence required reversal under *Almanza v. State*, supra. We will affirm the decision of the court of appeals.

### I.

On May 29, 1983, John Shelton, the deceased, was employed as a "bouncer" at the Cherokee Cattle Company, a club in San Marcos licensed to sell mixed drinks. Near midnight that night, Bobby Warren, a "doorman" at the club, observed appellant pour a drink from a bottle of liquor. Warren approached appellant, identified himself, and informed appellant that Texas law prohibits customers from bringing a bottle of liquor into a club licensed to sell mixed

drinks. In response, appellant clasped the bottle to his body. Warren reached for the bottle, but appellant protested it was his. When Warren grasped appellant by the shoulders and attempted to escort him from the club, appellant began struggling and pushed him away. Warren then seized appellant in a "headlock" and began pulling him towards the exit. Appellant, still clutching the liquor bottle to his body, continued to struggle.

At this point, the deceased, Shelton, came over to assist Warren. While Warren continued to apply the headlock, deceased grasped appellant by the waist and legs. Appellant continued to struggle and began "screaming and hollering" obscenities at the two men. Together, they carried appellant, struggling and cursing, out of the club. Once outside, appellant fell, or was pushed, to his knees. Warren struck him in the face and took the bottle from him. Warren and deceased then started to reenter the club.

Events from that moment were succinctly related by Warren at trial:

"[Shelton] had the door open and so I went in first, and then [Shelton], and I would say he was not more than two or three feet behind me, and the door I'm sure hadn't even completely closed, and we went back in, it was almost simultaneous that I heard one shot and then I leaped to get around the corridor and then I heard another shot ..."

Shelton's assailant yelled "I'm going to get you, you S.O.B.!" between the first and second shots. Both shots hit Shelton in the torso. One proved fatal.

Two witnesses testified they saw appellant leaning into the club through the partially opened front door at the time the shots were fired. While no one saw appellant actually fire a weapon, one witness testified that he saw "flashes" from appellant's position corresponding to the gun-shots. However, other testimony showed that when the police made their initial investigation shortly after the shooting, prior to Shelton's transport to hospital, no eyewitnesses to the shooting were found.

Appellant fled and was pursued by a number of the club's employees and patrons. During the pursuit, appellant fired three shots at his pursuers. Ultimately, appellant was cornered in a "box alley," tackled and captured. He began to yell, "I'm crazy. I'm crazy. I didn't know what I was doing." At least one witness heard what he later identified as the sound of metal striking the ground near where appellant was tackled. Upon searching the area a few moments later, the witness discovered a 5–shot revolver. The revolver was identified as the weapon that fired the bullets which killed Shelton.

The trial court charged the jury, *inter alia*, on the law of murder and voluntary manslaughter. The instruction defined murder as "intentionally and knowingly caus[ing] the death of an individual." The murder authorization paragraph provided, in pertinent part:

"Now if you find from the evidence beyond a reasonable doubt that on or about the 29th day of May, 1981, in Hays County, Texas, the defendant ... did then and there intentionally or knowingly cause the death of an individual ... by shooting him with a firearm, to wit: a pistol, as set forth in the indictment, then you will find the defendant guilty of murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt as to whether defendant is guilty of murder, then you will acquit him of murder and next consider whether he is guilty of voluntary manslaughter."

The charge then defined the offense of voluntary manslaughter, V.T.C.A. Penal Code, § 19.04, and applied the law of that offense to the facts of this case.[1] There-

---

1. "Our law further provides that a person commits the offense of voluntary manslaughter if he intentionally or knowingly causes the death of another person, except that he caused the death under the influence of sudden passion arising from an adequate cause.

'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another individual acting with the person killed, which passion arises at the time of the offense and is not solely the result of former provocation.

after, the court instructed the jury that if it found:

"... from the evidence beyond a reasonable doubt that the defendant is guilty of either murder or voluntary manslaughter, but [had] a reasonable doubt as to which offense he is guilty, then [it] must resolve that doubt in [the] defendant's favor and find him guilty of the lesser offense of voluntary manslaughter."

No charge was requested on selfdefense or other possible defensive issues. Appellant did not object to the charge prior to its submission to the jury, though the charge was manifestly erroneous under our holding in *Cobarrubio v. State*, supra.

Approximately three hours after retiring, the jury returned a verdict of "guilty of the lesser included offense of voluntary manslaughter." However, upon polling the jury, the parties discovered only two jurors would acknowledge that as their individual verdict. The court then admonished the jurors that they could not return a verdict unless it was unanimous. Thereafter, the jury retired for further deliberations.

A short time later, the jury sent a note to the court asking for "a further interpretation of" the instruction regarding what they were to do if they decided the defendant was guilty of an offense but could not decide between murder or voluntary manslaughter. The court replied that the jury was to "*carefully* re-read [the pertinent section] of the Charge of the Court, and ... then continue [its] deliberations." [2]

After deliberating another seventy-five minutes, the jury was allowed to separate and return home for the night. The next morning, after another two hours delibera-

tion, the jury returned a verdict of guilty of murder as charged in the indictment.

■ The State does not dispute that the evidence raises the issue of whether the defendant caused the death under the immediate influence of sudden passion arising from an adequate cause. See, V.T.C.A. Penal Code, § 19.04(a).[3] Therefore, in the instant case, the absence of "sudden passion" is an element of murder under § 19.02, supra. *Bradley v. State*, 688 S.W. 2d 847, 851 (Tex.Cr.App.1985). As a result, appellant was entitled to an acquittal on the murder charge unless the State proved the absence of "sudden passion" beyond a reasonable doubt. See, e.g., *Lawrence v. State*, 700 S.W.2d 208, 211 & 213 (Tex.Cr. App.1985). The trial court was required to so instruct the factfinder in the murder authorization paragraph of its charge. In failing to do so, the trial court erred. Article 36.14, V.A.C.C.P.; *Cobarrubio v. State*, supra.

*II.*

■ Under *Almanza v. State*, supra, unobjected to error in the court's instructions to the jury will mandate a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial." 686 S.W.2d at 171–172. See also, *Goff v. State*, 720 S.W.2d 94, 95 (Tex.Cr.App.1986).

In *Cobarrubio* the Court reasoned:

"With the ... issue of 'sudden passion' deleted from the paragraph on murder and placed *only* in the voluntary manslaughter paragraph ... there exists a decided likelihood that a jury would affirmatively answer the murder paragraph, never having considered the ...

'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

If you find from the evidence beyond a reasonable doubt that the defendant did intentionally or knowingly cause the death of [deceased] by shooting him with a firearm, to wit: a pistol, as set forth in the indictment, but you further find and believe from all the facts and circumstances in evidence in the case, or you have a reasonable doubt thereof, that the defendant, in

killing the deceased, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of voluntary manslaughter."

2. Trial court's emphasis. All other emphasis supplied unless otherwise indicated.

3. Hereinafter, the shorthand "sudden passion" will be used to denote "caused the death under the immediate influence of sudden passion arising from an adequate cause."

issue of sudden passion. . . . Thus, if the jurors followed the court's instructions to the letter—indeed, we must presume they did—the State's burden of proof was significantly diminished and appellant was denied an opportunity to have the jury determine his guilt on the issue of murder as [that offense is defined by Texas law]." [Emphasis in original] 675 S.W.2d at 752.

This likelihood led us previously to conclude that *"Cobarrubio* error" "precipitate[s] a denial of due process of law in the most fundamental sense." *Cobarrubio,* 675 S.W.2d at 752. However, the Court has since decided that this error may not in every case actually deny the defendant a "fair and impartial trial" so as fully to meet the test for fundamental error under *Almanza.* See, e.g., *Lawrence,* supra. But, that does not mean the "nature and character of" the error thereby changed. *Lawrence,* 700 S.W.2d at 217 (Clinton, J., dissenting). Inasmuch as the charge in *Cobarrubio* relieved the State of the burden of proving absence of sudden passion in order to obtain a verdict of guilty for the offense of murder, the error was indeed "egregious."[4] If from the facts of a case the "likelihood that the jury would affirmatively answer the murder paragraph, never having considered the issue . . . of sudden passion," *Cobarrubio,* supra, "appears from the record," Article 36.19, V.A.C.C.P., to be "actual, and not just theoretical," *Almanza,* supra, then there exists an *actual likelihood* that the accused was convicted of murder because the jury did not consider all the elements of the offense.

This court has had occasion to apply the *Almanza* standard for "fundamental er-

ror" to a number of cases involving *"Cobarrubio* error." In *Moore v. State,* 694 S.W.2d 528 (Tex.Cr.App.1985), this Court affirmed a conviction for murder where the defendant "admitted killing the deceased," but interposed selfdefense in justification therefor. 694 S.W.2d at 530–31. The Court rejected his contention that on the facts presented *Cobarrubio* error constituted fundamental error because "the evidence . . . at most, raised the issue of self-defense," and all indications, including the defendant's testimony and his counsel's jury argument, were that the defendant was pursuing that theory alone. Sudden passion was found not to have been raised; hence, there could be no denial of a fair and impartial trial in omitting an "implied element" from the murder application paragraph. See, also, 694 S.W.2d at 532 (Clinton, J., concurring); *Ex parte Chandler,* 719 S.W.2d 602, 606 (Tex.Cr.App.1986) (Clinton, J., dissenting). Accord: *Smith v. State,* 721 S.W.2d 844, 854 (Tex.Cr.App. 1986). *Jenkins v. State,* 740 S.W.2d 435, 443 (Tex.Cr.App.1987) (Opinion on State's Motion for Rehearing).

In *Lawrence,* supra, we reversed a court of appeals' finding of fundamental error stemming from *Cobarrubio* error, even though we determined that the evidence was "sufficient to raise the issue of sudden passion." *Id.,* at 211. We did so because:

"[a]lthough . . . there was sufficient evidence to raise the issue of voluntary manslaughter, there was more than sufficient evidence to convict appellant of murder. Appellant herself refuted any claim of voluntary manslaughter. Indeed, during closing argument, appel-

**4.** Indeed, this Court in *Lawrence* recognized as much when it held that:

"While we recognize that '*Cobarrubio* error' is distinguishable from '*Cumbie* [*v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979)] error' in that the 'element' omitted from the jury charge need not be pled in the indictment, nonetheless the evil perceived in the omission is arguably the same. In '*Cobarrubio* error' the jury is permitted to convict a defendant of murder without finding that the State disproved the existence of sudden passion, thus diminishing the State's burden of proof. We therefore find that '*Cobarrubio* error' is error,

that, under our now abandoned holding in *Cumbie* . . . would have necessitated automatic reversal."

700 S.W.2d at 212.

We are not unmindful that in *Lawrence* the Court overruled *Cobarrubio* to the extent that it held the error necessarily precipitated a denial of due process of law in the most fundamental sense. 700 S.W.2d at 213. We construe this to mean only that, consistent with our decision in *Almanza,* "*Cobarrubio* error" is not "automatically reversible," but must undergo a harm assessment. *Id.*

lant's attorney argued that the facts presented a classic case of self-defense." 700 S.W.2d at 211. On these facts, the Court concluded that the issue of "sudden passion" was "incidental" and the trial court's failure to draw the jury's attention to that murder element did not deny the defendant a fair and impartial trial. See *Goff v. State*, supra at 99; *Jenkins v. State*, supra at 443.

In *Castillo–Fuentes v. State*, 707 S.W.2d 559 (Tex.Cr.App.1986), this Court affirmed a court of appeals' judgment reversing a murder conviction for fundamental *Cobarrubio* error. We first distinguished *Lawrence* because, with no selfdefense theory raised, "the voluntary manslaughter theory was" *not* "incidental." "Conversely, a review of the record show[ed] voluntary manslaughter as the primary, indeed the only theory proffered by the defense." 707 S.W.2d at 562. Because the defendant explicitly relied upon voluntary manslaughter as a "defensive theory" (indeed as his sole "defense"), the Court concluded that the error "deprived [defendant] of a valuable right[,]' " went " 'to the very basis of the case', and certainly 'vitally affect[ed] his defensive theory' " such that the error "*can* realistically be construed to inure to the defendant's egregious harm." *Id.*

### III.

Considering the record of the guilt phase of the instant cause we note the following: First, none of the circumstances which led this Court to conclude in *Lawrence* that sudden passion was an "incidental" theory are present. The charge does not contain a selfdefense instruction. Appellant did not interpose any other defense or affirmative defense. The jury was not authorized to convict appellant of any offense other than murder or voluntary manslaughter. Hence, the charge authorized consideration of only two "theories": that appellant was criminally liable because his acts at the time in question constituted murder, or because they constituted voluntary manslaughter. Consequently, unlike *Lawrence*, there was no "additional theory" to which sudden passion could be "incidental."

Further, unlike *Lawrence*, where the Court found the defendant's testimony affirmatively refuted the presence of sudden passion, appellant did not testify at the guilt stage of his trial. Moreover, contrary to the State's contention that he made no "attempt ... to elicit testimony which would be pertinent to the theory of voluntary manslaughter," appellant questioned each competent witness as to the circumstances of that night, from appellant's confrontation with and ejection by the club's bouncers, through the subsequent chase and capture. It is of no moment that appellant developed the evidence of sudden passion primarily by cross examination of the State's witnesses. See, *Gonzales v. State*, 546 S.W.2d 617 (Tex.Cr.App.1977); *Schoelman v. State*, 644 S.W.2d 727 (Tex. Cr.App.1983). In these respects, the instant case is much closer to *Castillo–Fuentes* than to *Lawrence*.

Second, the testimony on the subject of sudden passion is substantial. As developed by the State and appellant, the facts show that appellant had been at the bar the better part of the evening when he was confronted by Warren, who attempted to take a bottle of liquor from him. When appellant refused, Warren seized him in a headlock, and, with the help of the deceased, dragged an increasingly angry and violent appellant to the front door where he was physically ejected. Appellant then fell or was thrown to the ground and was struck in the face. Almost immediately thereafter appellant fatally shot the deceased. By all indications, appellant and the deceased had not met before that night. These facts are clearly sufficient to raise the issue of sudden passion. Hence, a properly charged jury could reasonably doubt that appellant intentionally or knowingly killed the deceased in the absence of the immediate influence of sudden passion arising from an adequate cause. Indeed, polling of the jury after the return of the first "verdict" finding appellant guilty of voluntary manslaughter, shows that at least two jurors harbored such doubt, and resolved it, as per the trial court's instruction, in favor of a conviction for voluntary

manslaughter.[5] Indeed, these jurors may even have been convinced beyond a reasonable doubt of the *presence* of sudden passion. Given the state of the record before us, we are not prepared to characterize that conclusion as unreasonable.

Third, we observe there was no mention of voluntary manslaughter or sudden passion, as such, in the defense counsel's argument to the jury. The only express reference to these subjects were by the prosecutor: first, in *voir dire* when he summarily referred to the "doctrine of lesser included offenses;" and, later, during the close of argument to the jury when he argued extensively that any passion appellant was influenced by did not arise from an adequate cause.

Rather, defense counsel argued that the State had not proved every element of the offense beyond a reasonable doubt. He spoke at length of the "heavy burden" the State bears "to prove their case beyond a reasonable doubt." In that regard, he argued that the evidence was insufficient specifically as to identity and intent. In addition, he extensively attacked the credibility of the State's witnesses. However, counsel did not contest the State's version of the events leading up to appellant's ejection from the club.

The State now argues, on the basis of his counsel's argument alone, that appellant did not rely upon sudden passion or voluntary manslaughter, or only relied upon them in a "purely incidental" manner. From this they invite us to find that the error was not "egregiously harmful." We are unconvinced that, on that basis alone,

we should hold that no fundamental error is shown. Argument of counsel is only one factor to be considered in deciding if an accused has suffered "egregious harm." A court making such an inquiry must also consider the state of the evidence, the charge as a whole, and any other relevant information in the record. See *Almanza*, 686 S.W.2d at 171. This Court has never given jury argument *alone* controlling weight in our assessment of harm under *Almanza*. See, e.g. *Lawrence* and *Castillo-Fuentes*, both supra.

The court of appeals, after considering the above factors, opined that "were the record otherwise silent, a close question would be presented." 691 S.W.2d at 93. But, the Court decided, it need not resolve that question "because the record before us contains further evidence of harm to appellant", *id.,* namely, the first "verdict" finding appellant guilty of voluntary manslaughter, the subsequent poll of the jurors, and the jury note sent out during their further deliberations.[6]

Reviewing these events, the court of appeals concluded:

"Obviously, the jury believed appellant committed a crime when he shot [the deceased], but was unsure whether the crime he committed was murder or voluntary manslaughter. It is also obvious that the jury was unsure how it was to resolve this uncertainty.... Had the charge correctly instructed the jury that, to establish murder, the State had to prove beyond a reasonable doubt that appellant did not act under the immediate influence of sudden passion arising from

---

**5.** We have serious reservations concerning the validity of the instruction authorizing the jury to convict of voluntary manslaughter should it believe the accused to be guilty of either murder or voluntary manslaughter, but cannot decide between them. See McClung, Jury Charges for Texas Criminal Practice (1988) at 54. For, as we noted in *Gold v. State*, 736 S.W.2d 685, at 686 n. 1 (Tex.Cr.App.1987), it is at least theoretically possible that a jury could find itself unable to resolve its reasonable doubt as to the presence *or* absence of sudden passion. Because a finding of the former is indispensible to conviction for murder, and the latter, equally necessary to conviction for voluntary man-

slaughter, a jury in this predicament would have to acquit the accused of both offenses, though it found he intentionally or knowingly caused the death of another.

**6.** We reiterate what we said in *Castillo-Fuentes:* "We do not require direct evidence of harm, such as a jury note showing that the jury was confused to find reversible error." 707 S.W.2d at 563 n. 2. Nonetheless, it is not improper to review such evidence. Because the court of appeals apparently found this evidence decisive on the issue of harm, we examine that decision.

an adequate cause, it is possible the jury would have returned a different verdict."

*Id.,* at 94.

The State argues that, contrary to the court of appeals judgment, these events show the jury *did* consider voluntary manslaughter and, therefore, rebut the "likelihood" that the charge error could have lead it to convict for murder without considering voluntary manslaughter. Instead, the State argues, they show that a majority of the jury thought appellant guilty of murder and, ultimately, convinced the minority of the soundness of that conclusion. The "possibility" that the jury would deliver a different verdict had they been correctly charged, the argument continues, is "nebulous" or "dimly seen" and, thus, does not rise to the level of "egregious harm."

A somewhat similar contention was addressed by this Court in *Castillo–Fuentes.* There we observed:

> "During jury deliberations ... the jury sent the following note to the court:
>
> 'Are the charges of murder and voluntary manslaughter to be considered independently or must the charge of murder be first deliberated as directed before proceeding to deliberation of voluntary manslaughter?'
>
> This exchange appears to complicate our fundamental error assessment. It can be interpreted to mean that the jury did indeed consider the entire charge, since they obviously were considering the possibility of voluntary manslaughter as well as a conviction for murder. Therefore, it could be argued that there could not possibly be 'a decided likelihood that a jury would affirmatively answer the murder paragraph, never having considered the defensive issue of sudden passion.' "

*Id.* at 562. The Court concluded that, while "this jury obviously did consider ... sudden passion in their deliberations":

> "The jury's question strikingly shows, however, in a non-theoretical, real-life situation, the Cobarrubio problem: it shows that this jury was confused and misled by the possibility of ending their deliberations with the murder application paragraph."

707 S.W.2d at 563.

In our view the same conclusion is compelled in the instant case. It may well be that these facts show that the jurors "considered" the offense of voluntary manslaughter. It may also be that, in doing so, they "considered" the issue of sudden passion. However, it must be remembered that the charge omitted sudden passion *as an element of murder.* If the jury followed the law as set forth in the charge— as we must presume they did—they could quite reasonably have decided that they could convict appellant of murder without deciding, or even addressing, sudden passion.

That the majority convinced the dissenters to abandon their initial "verdict" of voluntary manslaughter could mean that it convinced them that sudden passion was absent. However, it could just as reasonably mean that the majority, relying upon the erroneous charge, convinced the minority that sudden passion was not a consideration in assessing liability for murder under Texas law and, therefore, need not be addressed or decided in order to convict appellant of that offense. In other words, the majority could have convinced the minority members that they could avoid what was obviously a hard question for them simply by ignoring it—precisely the scenario we feared in *Cobarrubio.*

We therefore concur in the court of appeal's conclusion that, on the facts of this case, the omission of the element of the absence of sudden passion from the charge on murder denied appellant a fair and impartial trial.

The judgment of the court of appeals is accordingly affirmed.

ONION, P.J., dissents.