Joe Earle HUFFMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–82–408–CR(T).

Court of Appeals of Texas, Austin.

April 17, 1985.

Terral R. Smith, Schaubhut, Smith & O'Meara, Austin, for appellant.

John B. Henderson, Jr., County Atty., Cameron, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

PER CURIAM.

A jury found appellant guilty of murder and assessed punishment at imprisonment for 80 years. Tex.Pen.Code Ann. § 19.02 (1974). Finding no reversible error, we affirm the judgment of conviction.

At approximately 9:00 p.m., December 22, 1979, appellant overpowered the jailer and escaped from the Milam County jail, where he was being held pending trial for aggravated robbery. Appellant took with him the jailer's .38 caliber pistol. With this pistol, appellant later shot and killed Odie Sapp, the security guard at the Royal Seating Company plant in Cameron.

■ In his first ground of error, appellant contends the evidence is insufficient to support the conviction because the testimony established, as a matter of law, that he shot Sapp in self-defense. To establish self-defense as a matter of law, the evidence must be uncontradicted and no fact issue thereon presented for the jury's consideration. *Escamilla v. State*, 464 S.W.2d 840 (Tex.Cr.App.1971); *Parkman v. State*, 149 Tex.Cr.R. 101, 191 S.W.2d 743 (1945). We must, therefore, examine the evidence concerning the shooting of Sapp in some detail.

Appellant testified he spent the night following his escape in a gulley. In the morning, he made his way to the Royal Seating plant. The plant was closed, but Sapp permitted appellant to enter the office to escape the cold, wet weather. Inside the office, appellant and Sapp exchanged small talk for several minutes. Appellant then asked for and received Sapp's permission to use the office telephone.

Appellant further testified that when he turned to face Sapp after hanging up the phone, Sapp was holding what appeared to be a pistol inside his jacket pocket. Sapp told appellant to raise his hands. As appellant did so, Sapp fired his pistol. The bullet grazed appellant's leg and caused a butane cigarette lighter in appellant's pants pocket to explode. Thinking he had been shot, appellant pulled the .38 caliber pistol from his waistband and fired at Sapp. When Sapp seemed to fire again, appellant responded with two more shots. Appellant testified that all the shots were fired within a span of five seconds.

After the shooting stopped, appellant took Sapp's pistol and fled in Sapp's car, but was soon forced to abandon the car when it ran out of gas. Ultimately, appellant made his way to Austin, where he was arrested in a motel room later that day.

Dr. Robert Walter performed the autopsy on Sapp's body. Walter testified he found two bullet wounds, one in the shoulder and one in the center chest. The latter bullet had pierced Sapp's heart, killing him instantly. Walter also found powder burns on Sapp's right hand.

Fred Rymer, chief firearms examiner for the Department of Public Safety, examined the two pistols involved in the shooting. Sapp's pistol was a .22 caliber nine-shot revolver. When discovered in Sapp's abandoned car, the pistol's cylinder contained five live rounds, one expended cartridge,

and three exploded cartridges. The chambers containing the exploded cartridges also contained traces of metal matching the .38 caliber bullets found in the pistol wielded by appellant. This led Rymer to theorize that one of the bullets fired by appellant had struck the cylinder of Sapp's pistol, causing the explosion of the three cartridges. Because the explosion of the cartridges had frozen the cylinder and left the pistol inoperative, Rymer concluded that the one expended cartridge was probably fired before the explosion of the other cartridges. Rymer was unable to determine how recently this shot had been fired.

Ronald Urbanovsky, a Department of Public Safety chemist, conducted an examination of the clothes worn by Sapp and appellant at the time of the shooting. Urbanovsky testified he found two bullet holes, one of entry and one of exit, in the right front pocket of appellant's jeans. This pocket also contained fragments of a plastic butane cigarette lighter. Urbanovsky found no traces of gun powder residue around the bullet holes in appellant's jeans.

Urbanovsky found bullet holes, but no powder residue, in the shoulders of Sapp's jacket and shirt. The right front pocket of Sapp's jacket contained several holes, and powder residue was found both inside and outside the pocket. Sapp's shirt also had a bullet hole, surrounded by powder residue, in the center chest area.

Based on the absence of powder residue, Urbanovsky concluded that the bullet that grazed appellant's leg and the bullet that entered Sapp's shoulder were fired from a distance in excess of four feet. Based on a comparison of the powder residue found around the bullet hole in the chest area of Sapp's shirt and powder residue samples taken from test firings of the pistol with which appellant killed Sapp, Urbanovsky concluded that the fatal shot was fired from a distance of approximately two feet.

Contrary to appellant's contention, the evidence raised a fact issue as to whether appellant acted in self-defense. Even if it is assumed that a bullet fired from Sapp's pistol grazed appellant's leg, the physical evidence does not necessarily support appellant's claim that Sapp fired the first shot. Moreover, Urbanovsky's testimony that the muzzle of appellant's pistol was only two feet from Sapp's chest when the fatal shot was fired, while all the other shots were fired from a distance exceeding four feet, suggests that after Sapp was wounded and his pistol rendered inoperative, appellant approached and fatally shot him at close range. Because a fact issue was raised, the trial court properly submitted the self-defense question to the jury for determination. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends the trial court erred by permitting appellant to be tried with his hands and feet shackled in view of the jury. Appellant argues the record does not reflect adequate justification for this procedure.

Appellant's trial was held in May, 1980. In March, 1980, appellant was tried and convicted for aggravated robbery, the offense for which he was being held at the time he escaped from the Milam County jail, and sentenced to imprisonment for life. On appeal from this conviction, appellant's sole ground of error was that he was impermissibly shackled during the jury trial. This Court overruled the ground of error and affirmed the judgment of conviction in an unpublished opinion. *Huffman v. State*, No. 3–82–332–CR(T), Tex.App.— Austin, February 23, 1983, pet. ref'd.

Immediately prior to the selection of the jury in the instant cause, appellant's counsel, who also represented appellant before the same judge at the aggravated robbery trial, moved that appellant's handcuffs and leg chains be removed. After it was agreed by the parties that the evidence concerning the need for shackles adduced at the aggravated robbery trial could also be considered in the instant cause, appellant's motion was overruled.

In our opinion in No. 3–82–332– CR(T), we concluded, after a thorough examination of the evidence and review of the case law, that the trial court did not abuse

its discretion in ordering appellant to be tried wearing handcuffs and leg chains. The only changes in circumstance between the robbery trial and the instant trial two months later were that appellant was no longer under indictment for aggravated robbery, having been convicted for that offense, and the capital portion of the murder indictment had been abandoned by the State. Most significantly, the trial court still had before it the evidence of appellant's stated intention of again escaping if the opportunity arose. For the reasons set out in cause no. 3–82–332–CR(T), we overrule appellant's second ground of error.

In ground of error number three, appellant complains of the trial court's refusal to grant his motion for mistrial made after a witness for the State testified to his opinion of appellant's guilt. John Brooks, chief deputy sheriff of Milam County, was asked if he felt a crime was committed in the shooting of Odie Sapp. Brooks replied in the affirmative, whereupon appellant objected and requested the jury be instructed to disregard the question and answer. The requested instruction was given, but the trial court denied appellant's motion for mistrial.

■ It was error for the State to ask the witness his opinion as to appellant's guilt. *Boyde v. State,* 513 S.W.2d 588 (Tex.Cr.App.1974). It is also clear from the record that the trial court would not have permitted Brooks to answer the question had appellant promptly objected. But, the question having been asked and answered, the issue presented is whether the instruction to disregard was sufficient to cure the error. We hold that it was. The question and answer were not of such character as to suggest the impossibility of withdrawing whatever prejudicial impression was produced on the minds of the jury. Appellant's third ground of error is overruled.

In his fourth ground of error, appellant contends the trial court erroneously admitted evidence of an extraneous offense. Appellant did not object to testimony concerning his escape from the Milam County jail, and did not object when the jury was informed that he was in jail awaiting trial on a criminal indictment, but he did object to testimony informing the jury that the offense alleged in the indictment was aggravated robbery. While conceding that the escape from jail was a part of the *res gestae* of the charged offense, appellant argues it was irrelevant and unduly prejudicial to inform the jury of the offense for which he was being held.

■ We agree that appellant's escape from jail was part of the *res gestae.* Informing the jury that appellant was in jail awaiting trial for aggravated robbery prevented speculation by the jury as to the nature of the offense for which he was being held at the time of his escape. Such speculation could have resulted in greater harm to appellant than was caused by the testimony of which he now complains. We are satisfied that the complained of testimony was, at most, harmless error.

■ In addition to the brief filed on appellant's behalf by his appointed counsel on appeal, the record contains a *pro se* brief raising additional grounds of error. There is no right to hybrid representation. *Rudd v. State,* 616 S.W.2d 623 (Tex.Cr. App.1981); *Landers v. State,* 550 S.W.2d 272 (Tex.Cr.App.1977). The *pro se* brief filed in this appeal, therefore, presents nothing for review. However, an examination of the *pro se* brief reveals one contention that merits further discussion.

■ In its charge at the guilt/innocence stage, the trial court instructed the jury on the lesser offense of voluntary manslaughter. Tex.Pen.Code Ann. § 19.04 (1974). When, in a prosecution for murder, an issue is raised whether the defendant acted under the immediate influence of sudden passion arising from an adequate cause, the State must prove the absence of such influence beyond a reasonable doubt in order to establish murder. *Bradley v. State,* 688 S.W.2d 847 (Tex.Cr.App.1985); *Braudrick v. State,* 572 S.W.2d 709 (Tex. Cr.App.1978). In such a case, the trial court commits error if it omits this "implied

element" when applying the law of murder to the facts of the case. *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1983). In *Jenkins v. State*, 688 S.W.2d 504 (Tex. Cr.App.1983), the court held such error to be "fundamental," and hence not waived by a failure to object. In the instant cause, the charge to the jury contains *Cobarrubio* error to which appellant did not object.

■■■■ In *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), the court substantially altered the law of fundamental error in the jury charge. An error in the charge to which no proper objection was made at trial will now result in reversal only if the error was so egregious and created such harm that the accused did not have a fair and impartial trial. The degree of harm must be assayed in light of the entire charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. The record must reveal actual, not just theoretical, harm to the accused, and no error in the charge requires "automatic" reversal.

■■■■ Our review of the evidence in this cause discloses no evidence that appellant was acting under the influence of sudden passion arising from an adequate cause at the time he shot Odie Sapp. Appellant's testimony that he feared for his life at the time of the shooting did not, in itself, entitle him to a charge on voluntary manslaughter. *Daniels v. State*, 645 S.W.2d 459 (Tex.Cr.App.1983). Because the issue was not raised by the evidence, the State did not have the burden of proving appellant was not acting out of sudden passion arising from an adequate cause. Therefore, the failure of the charge to place this burden on the State cannot be characterized as error so egregious as to have denied appellant a fair and impartial trial.

The judgment of conviction is affirmed.