Opinion issued March 8, 2007






 










In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00310-CR






O'BRYANT O'NEIL, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1035172






MEMORANDUM OPINION A jury found appellant, O'Bryant O'Neil, guilty of the offense of aggravated
sexual assault of a child, (1) and the trial court assessed his punishment at confinement
for life. In three points of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction and that the trial court erred in denying
his motion for mistrial.

 We affirm.

Factual and Procedural Background

 Houston Police Department ("HPD") Officer C. Ponder testified that, on
August 28, 2004, he was dispatched to the apartment of Cheryl Thompson,
appellant's girlfriend, regarding a "sexual assault involving a juvenile." Upon his
arrival, Ponder found inside the apartment approximately ten to twelve people who
were "upset and agitated" as the result of receiving "some pretty bad information." 
One of them, Sydney Wright, an acquaintance of the complainant, told Ponder that
appellant had sexually assaulted the complainant, who was seven years old. 
However, the complainant, who was present when Ponder spoke with Wright and able
to hear their conversation, told Ponder that she never had her clothes off in front of
appellant, nor had he ever penetrated her with his sexual organ. The complainant did
not state to Ponder whether appellant had penetrated her mouth with his sexual organ.

 At trial, the complainant, now nine years old, testified that during spring break,
appellant "touched [her] private part" when she was at Thompson's apartment. The
complainant explained that as she sat on the living room floor, watching television,
appellant came into the living room and sat down on the couch. Appellant asked the
complainant to come over to the couch, and thereafter she laid down on the couch,
whereupon appellant "touched" her "private part." Specifically, she testified that
after appellant touched her over her clothing, he pulled her pants and panties down,
took off his own pants, and "put his private part in [her] mouth." He then "put his
private part" in her sexual organ. When someone began knocking on the front door,
appellant stopped, "hurried up, put his clothes on, [and] went to the door." The
complainant ran to the restroom, locked the door, and washed her mouth out. She
explained that the only other person inside the apartment at the time of the sexual
assault was Tony, who was watching television in his bedroom.

 The complainant explained that on "[t]hat day," "[w]hen [Thompson] got
home, [the complainant] told her what happened and they ended up calling the cops." 
That same day, the complainant also told Wright about the sexual assault. After
telling Wright what had happened, the complainant and Jalessa Bledsoe, Thompson's
daughter, went to the home of Bledsoe's boyfriend. On cross-examination, the
complainant testified that the first time that she told Thompson what had happened
was when Thompson came home from work on the day that Officer Ponder came to
the apartment, not the date of the incident. She explained that, on the day that the
sexual assault occurred, she did not tell anyone what had happened, and she never
spoke to appellant concerning the assault. Although the complainant further testified
that appellant had never done anything like this before, she later stated that he had
sexually assaulted her on one other occasion.

 Dr. Deni Shaw testified that, on August 30, 2004, he conducted a sexual assault
examination on the complainant in the emergency room at Texas Children's Hospital. 
He noted that her history chart stated, "[p]er patient, someone tried to put their private
inside mine . . . [a] while ago." Shaw found no injuries or bruises on the
complainant's body and, when he observed the complainant's vaginal area, he "did
not see any lacerations, bruises, tears or cuts." Shaw explained that "in most cases
of sexual assault, even when penetration has occurred, the exam findings are normal." 
Therefore, it is often necessary "to rely on the history provided by the patient to
diagnose it." From his examination, Shaw was unable to determine whether the
complainant had been sexually assaulted.

 Based on the complainant's history, obtained by a social worker, Shaw
determined that the alleged sexual assault "had occurred multiple times prior to three
days prior to when [the complainant] came to the emergency room." Shaw explained
that "[i]f you go to have a medical evaluation within 72 hours, you're more likely to
find something if it's going to be there. If you wait more than 72 hours, there's a
lower likelihood of finding something if there was something physically there. But
in most cases, most things are not physically there even in the first three days."

 Rachel O'Neil Wheeler, appellant's sister, testified that she is a Houston
Independent School District nurse at Pearl Rocker Elementary and that appellant
lived with her from "April or May of 2004" until August 20, 2004, when he moved
back in with Thompson. 

 Jalessa Bledsoe, Thompson's daughter, testified that, in August 2004, she was
living with her mother and was present at the apartment on August 28, 2004, when
Officer Ponder came to the apartment. In the summer of 2005, April Como, the
complainant's aunt, called and told Bledsoe and Thompson that the complainant
wished to speak to them. When they went to Como's apartment, the complainant told
them "that it never happened" and that the complainant "thought it was just a dream." 
The complainant said that "she didn't want to be with her mother, that she wanted to
be with [Bledsoe] and [her] family." Como was initially inside the apartment, but
then "stepped out because of a friend." Bledsoe further testified that appellant never
baby-sat the complainant, nor was he ever left alone with her. 

 Cheryl Thompson testified that she had a relationship with Terry Como, the
complainant's grandfather, for fifteen years, until 2003. She described her
relationship with the complainant as the complainant being her "step granddaughter." 
Thompson "raised [the complainant] from a day old, as soon as she was out of the
hospital, until she was four years old." When the complainant was four years old, the
complainant went to live with her mother for two years, and Thompson did not
regularly see her again until she was six years old. The complainant began living
with Thompson again in December 2003, approximately eight or nine months prior
to the incident in question.

 Thompson further testified that she had known appellant for about three years. 
She had been seeing appellant from 2002 until around May or June of 2004, when
appellant moved out of the apartment. Appellant moved back into the apartment
approximately one to two weeks prior to August 28, 2004, and, as of that date, the
complainant had been in Thompson's apartment for only three days. Prior to that
date, the complainant had been with her mother for "two weeks, roughly three days,
something to that effect." Thompson explained that, during the time period in which
the alleged sexual assault occurred, appellant was not alone with the complainant. 

 After taking the complainant to the hospital for an examination, the next time
that Thompson saw the complainant was in June or July of 2005, at Como's home,
after the complainant told Como that she wanted to speak with Thompson. The
complainant told Thompson that "she was sorry, she hoped [Thompson] didn't ever
hate her because she lied, that she was really sorry about it, but she tried to tell the
truth at the hospital and nobody would listen to the truth and that she was really
sorry." The complainant stated that appellant "never touched her, she knows he loves
her and would never hurt her." The complainant told Thompson that she lied because
"she wanted [Thompson] back with [the complainant's] grandfather, she wanted her
family back together like she remembered." 

 April Como, the complainant's aunt, testified that until August 2004,
Thompson was taking care of the complainant. After the incident in question, the
complainant lived with Como for about one month while Child Protective Services
conducted its investigation. Como did not recall a time when Thompson and Bledsoe
came over to her apartment to speak with the complainant. Although the complainant
told Como that she wanted to speak with Thompson, Como did not remember
Thompson and Bledsoe coming over to her apartment to speak with the complainant.

Legal and Factual Sufficiency

 In his second and third points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because the complainant's
testimony against him was "not credible." Appellant asserts that (1) there was no
physical evidence that the complainant had been sexually assaulted; (2) the
complainant testified that the alleged offense took place during spring break, but
appellant demonstrated that he was living with Rachel Wheeler, his sister, during that
time; (3) Rachel Wheeler, a registered nurse, testified that, based on her training, she
did not believe that appellant had molested the complainant; (4) both Jalessa Bledsoe
and Cheryl Thompson testified that the complainant later told them that she had lied
about appellant; and (5) the complainant had a motive to fabricate the sexual assault,
evidenced by her telling Thompson that she wanted appellant gone and wanted
Thompson to live with the complainant's grandfather. Appellant contends that "at
some point the credibility of the complainant is so undermined that a reviewing court
cannot have confidence in a verdict supported by the complainant's testimony" and
urges that "this is such a case."

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The trier of fact
is the sole judge of the weight and credibility of the evidence. Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal
sufficiency review, we may not reevaluate the weight and credibility of the evidence
and substitute our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999). 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
jury's verdict seems "clearly wrong and manifestly unjust," or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and preponderance
of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).
In performing a factual sufficiency review, we are to give deference to the fact
finder's determinations, including the determinations involving the credibility and
demeanor of witnesses. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
We may not substitute our judgment for the fact-finder's. Watson, 204 S.W.3d at
414-15.

 A person commits the offense of aggravated sexual assault of a child (2) if the
person intentionally or knowingly causes the mouth of a child to contact the anus or
sexual organ of another person, including the actor, and the child is younger than
fourteen years of age. Tex. Pen. Code Ann. § 22.021(a)(1)(B)(v), (2)(B) (Vernon
Supp. 2006). Here, the jury found appellant guilty of sexually assaulting the
complainant by causing the complainant's mouth to contact his sexual organ.

 The complainant testified that, when she was seven years old, appellant came
into the living room, inserted his penis into her mouth, and then inserted his penis
into her vagina. Although there is no physical evidence that appellant sexually
assaulted the complainant, Dr. Shaw testified that there often is no physical evidence
that a sexual assault has occurred. Moreover, we note that the testimony of a
complainant, standing alone, is sufficient to support a conviction for sexual assault. 
Ruiz v. State, 891 S.W.2d 302, 304 (Tex. App.--San Antonio 1994, pet. ref'd);
Jordan-Maier v. State, 792 S.W.2d 188, 190 (Tex. App.--Houston [1st Dist.] 1990,
pet. ref'd). 

 Appellant contends that the complainant's testimony is not credible because
both Jalessa Bledsoe and Cheryl Thompson testified that the complainant told them
that she lied about the alleged sexual assault and the complainant had a motive to
fabricate her story. However, April Como testified that she did not recall Bledsoe and
Thompson coming to her apartment to speak with the complainant. Also, although
appellant attacks the credibility and demeanor of the complainant, the trier of fact is
the sole judge of the weight and credibility of the evidence. See Margraves, 34
S.W.3d at 919; Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain, 958
S.W.2d at 408-09. Furthermore, the "reconciliation of conflicts is within the
exclusive province of the jury," and the jury is free "to believe some testimony and
disbelieve other testimony." Margraves, 34 S.W.3d at 919. Therefore, the jury was
free to believe the complainant's version of events.

 Viewing all the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Furthermore, we conclude, viewing the evidence
neutrally, that the evidence is not so weak that the verdict is clearly wrong or
manifestly unjust or that the proof of guilt is against the great weight and
preponderance of the evidence. Accordingly, we hold that the evidence is legally and
factually sufficient to support appellant's conviction for aggravated sexual assault of
a child.

 We overrule appellant's second and third points of error.

Mistrial

 In his first point of error, appellant argues that the trial court erred in denying
his motion for mistrial "where the State introduced testimony that the people who
gathered at Cheryl Thompson's apartment waiting for the police believed that . . .
appellant was guilty."

 "[T]he expression of guilt or innocence" is a "conclusion to be reached by the
jury based upon the instruction given them in the court's charge, coupled with
evidence admitted by the judge through the course of the trial." Boyde v. State, 513
S.W.2d 588, 590 (Tex. Crim. App. 1974). No witness is competent to voice an
opinion as to guilt or innocence. See id. 

 At trial, Officer Ponder, when asked by the prosecutor what he did while at
Thompson's apartment, testified that,

Well, while I'm there, I spoke-at first I had everybody step out. Then
Ashley and Sydney, I spoke to them. And then I determined also while
I was there that none of the others out in that group was there that
particular day had any direct information or had any knowledge of
exactly what took place, so I didn't-you know, but as a group I spoke to
them as far as obtaining information on names, dates of birth of the
parties involved. Then I spoke to them in regards to the defendant, Mr.
O'Bryant, if this was something he was possible of doing. As a group
they said yeah.


(emphasis added). The trial court sustained appellant's objection to the introduction
of the evidence, instructed the jury to disregard the testimony, and denied appellant's
motion for mistrial. Appellant argues that "because appellant was clearly harmed by
the officer's testimony," the trial court's instructions to disregard were insufficient
under the circumstances.

 When a trial court sustains an objection and instructs a jury to disregard
testimony but denies a defendant's motion for mistrial, the issue is whether the trial
court erred in denying the motion for mistrial. Sauceda v. State, 859 S.W.2d 469, 474
(Tex. App.--Dallas 1993, pet. ref'd). The denial of a motion for mistrial is reviewed
under an abuse of discretion standard. Trevino v. State, 991 S.W.2d 849, 851 (Tex.
Crim. App. 1999). A trial court does not abuse its discretion when its decision is at
least within the "zone of reasonable disagreement." Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991).

 A prompt instruction to disregard generally cures the error arising out of an
improper question and answer. Herrero v. State, 124 S.W.3d 827, 836 (Tex.
App.--Houston [14th Dist.] 2003, no pet.). Here, "[t]he question and answer were
not of such character as to suggest the impossibility of withdrawing whatever
prejudicial impression was produced on the minds of the jury." See Huffman v. State,
691 S.W.2d 726, 730 (Tex. App.--Austin 1985, no pet.) (holding instruction to
disregard opinion testimony as to defendant's guilt cured error). Accordingly, we
hold that the trial court did not abuse its discretion in denying appellant's motion for
mistrial.

 We overrule appellant's first point of error.

Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. § 
2. "" 
 §§