# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00231-CR

**Jose Guadalupe Reyna, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. D-1-DC-06-203677, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Jose Guadalupe Reyna of driving while intoxicated. After Reyna pleaded true to allegations that he committed two prior felonies, the jury assessed punishment at ten years in prison. On appeal, Reyna contends that his trial counsel rendered ineffective assistance because he failed to preserve error on a challenge for cause to a jury panelist. Reyna also contends that the trial court erred by admitting expert testimony regarding the guilt of the defendant and in allowing the State to question a fact witness about a legal conclusion. We will affirm the judgment.

## BACKGROUND

Reyna does not challenge the sufficiency of the evidence supporting his conviction, but a review of the testimony and evidence will provide context for the errors he asserts.

Reyna was arrested after a traffic accident in which he rear-ended another vehicle. Reyna was part of a group of cars driving on the southbound access road of Interstate 35 between

Parmer and Braker Lanes in Austin on the afternoon of July 9, 2006. Other drivers testified that Reyna was driving aggressively and faster than the other cars. A Mustang pulled onto the road in front of Reyna driving slowly—perhaps 20 miles per hour—with its hazard lights flashing. Other drivers moved into the left lane, but Reyna rear-ended the Mustang. The collision destroyed the back of the Mustang, ripping out the rear seats and rupturing the gas tank. The impact broke windows and jammed the driver's door shut.

Austin Police Officer Thomas Castonguay, who had graduated from the police academy only 16 days before this collision, responded to the accident. Castonguay testified that Reyna's eyes were bloodshot and glassy and that he had an odor of alcohol. Castonguay testified that Reyna said he had drunk one beer with pizza almost two hours earlier, and he declined to give a breath or blood sample. The officer conceded that the smell of alcohol might have come from beer that sloshed inside the cabin of Reyna's vehicle during the crash. Castonguay found a six-pack of beer in Reyna's vehicle—one bottle near the center console opened with a small amount of liquid inside, one bottle still capped but with the neck broken off, and three unopened bottles. There were also two bottle caps, as well as one empty bottle and numerous empty beer cans in the truck bed.

Under the supervision of his field training officer, James Kettleman, Castonguay administered field sobriety tests to Reyna. The jury watched the video of the tests. Castonguay testified that he noted six of six possible clues of intoxication on the horizontal gaze nystagmus ("HGN") test, four of eight possible clues on the walk-and-turn test (Reyna took an extra step each direction, turned improperly, and used his arms for balance), and two out of four on the one-leg stand (Reyna used his arms for balance and put his foot down). On cross-examination, Reyna's attorney

2

challenged whether Reyna swayed sufficiently in either movement test to constitute a clue of intoxication. Castonguay testified that he concluded that Reyna had impaired his mental and physical faculties by using alcohol based on the field sobriety tests, the evidence of beer consumption, and the fact that other cars were able to avoid the Mustang that Reyna rear-ended.

Officer Kettleman also testified about the field sobriety tests. He said that he observed the tests, allowing Castonguay to take the lead and make decisions, but correcting him if he departed from standard procedure. Kettleman testified that he agreed with Castonguay's determination that Reyna was intoxicated. Although Reyna intimated through cross-examination that his excessive weight affected the tests, Kettleman testified that he did not think Reyna was overweight enough to render the walk-and-turn and one-leg stand tests inaccurate.

Austin Police Officer Robert Mitchell, a field sobriety test instructor and member of the Austin Police Department's DWI Enforcement Team, also gave his opinion on Reyna's intoxication based on his review of evidence. He reviewed videos of the accident taken from surveillance cameras at a nearby business, video of the field sobriety tests, and the arresting officer's offense report and probable cause affidavit. In watching the videos, he noted Reyna's speed relative to other vehicles as well as Reyna's calm demeanor during the field sobriety tests and in the patrol car despite the bad collision. Mitchell also testified that Reyna's response to instructions—having to be told six times to keep his head still during the HGN, three times to keep his hands out of his pockets, his counting ten steps when told to take nine, and his general slow reaction time—indicated intoxication. Combined with Reyna's performance on the field sobriety tests, these factors

3

persuaded Mitchell that Reyna had lost his normal mental and physical faculties. Mitchell testified that he had no doubt that Reyna was intoxicated when he was driving.

Reyna's cousin by marriage, Graciela Contreras, testified that she did not believe Reyna was intoxicated. Reyna had left her home less than twenty minutes before the accident and was on his way to get freon to fix her air conditioner. She did not smell any alcohol on his breath or see any sign of intoxication. Although she knew that Reyna had been arrested previously for DWI, she allowed her brother to accompany Reyna. She said she would not have done so if she had thought Reyna was intoxicated.

## DISCUSSION

Reyna raises three issues on appeal. He contends that the trial court erred in admitting expert testimony about Reyna's guilt and erred in allowing the State to question a fact witness about a legal conclusion—to wit, whether Reyna was intoxicated. Reyna also contends that his trial counsel rendered ineffective assistance by failing to preserve error on the trial court's denial of a challenge to a prospective juror for cause.

We review the admission of evidence for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id*.

Reyna complains that the court improperly permitted Officer Mitchell to state his expert opinion that Reyna was intoxicated when he drove the car—in other words, to say that Reyna was guilty. Reyna did not preserve this error for our review because he did not object to this testimony at trial, *see* Tex. R. Evid. 103; *see also* Tex. R. App. P. 33.1, and Reyna does not argue

4

that the admission of the evidence was fundamental error that violated the interest of the public generally as declared in statutes or the constitution. *See Saldano v. State*, 70 S.W.3d 873, 887-89 (Tex. Crim. App. 2002). Mitchell explained the basis of his opinion, permitting the jury to evaluate whether it agreed with Mitchell's conclusion. Reyna has not demonstrated reversible error from the admission of this evidence.

Reyna next contends that the trial court erred by permitting the State to question Castonguay about his legal conclusion on the ultimate issue of the case. The trial court sustained Reyna's objection to the State asking Castonguay this question: "So do you believe beyond a reasonable doubt today that he was intoxicated on July 9, 2006?" The State then asked, "So what level of certainty did you have that day July 9, 2006, that Mr. Reyna was intoxicated?" Castonguay responded as follows:

> I believe that at that time Mr. Reyna was operating a motor vehicle and post the collision, everything I observed from the damage to the vehicles, the results of the standardized field sobriety tests, my observations prior to that, what I located inside the vehicle, I believed that beyond a reasonable doubt in my mind that Mr. Reyna, his mental and physical faculties were impaired due to the introduction of alcohol and an arrest was warranted in that case.

Reyna did not object at trial to this follow-up question or the answer. He asserts that the trial court erred by not *sua sponte* requiring the State to instruct the witness in some manner. He contends that, although peace officers must decide whether they have probable cause to believe someone committed an offense before arresting the potential offender, they must not give their opinion in court about whether they believe beyond a reasonable doubt that the defendant committed the offense, citing *Huffman v. State*, 691 S.W.2d 726, 730 (Tex. App.—Austin 1985, no pet.) (court

5

erred by allowing State to ask if he felt a shooting was a crime rather than permissible self-defense, but cured error by instruction to disregard testimony).

Reyna does not present reversible error on this issue. He failed to preserve any error for our review with regard to the follow-up question by failing to object to the question or the answer and by failing to ask that the jury be instructed to disregard the testimony. *See* Tex. R. Evid. 103; Tex. R. App. P. 33.1(a). Further, we find no error. Much of Castonguay's testimony could be deemed lay opinion testimony, and some of the more technical points of field sobriety testing might be considered expert opinion testimony. *See* Tex. R. Evid. 701, 702. Either way, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id*. R. 704. The court's admission of Castonguay's testimony regarding whether Reyna was intoxicated was not error simply because Castonguay testified that his observations persuaded him "beyond a reasonable doubt" that Reyna was driving while intoxicated. *See Osburn v. State*, 92 S.W.3d 531, 535-38 (Tex. Crim. App. 2002).

Finally, Reyna contends that his trial counsel provided ineffective assistance because he failed to preserve error regarding the trial court's denial of his request to strike a jury panelist for cause. We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient, and if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective

6

standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. A defendant is not entitled to errorless counsel or counsel whose competency is judged by hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc); *see also* U.S. Const. amend. VI. When reviewing a claim of ineffective assistance, we look to the totality of the representation in the particular facts of the case, and not to isolated instances of error or to a single portion of the trial. *Thompson*, 9 S.W.3d at 813; *Rivera-Reyes v. State*, 252 S.W.3d 781, 788-89 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Absent both showings, we cannot conclude that there has been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson*, 9 S.W.3d at 813. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Id*. We do not speculate about an attorney's strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.).

Reyna asserts that his trial counsel failed to preserve as reviewable error the trial court's denial of his challenge for cause to a jury panelist. In order to preserve error in the denial of a challenge for cause, a party must take the following steps: (1) the voir dire "of the individual venireperson" must be recorded and transcribed; (2) the appellant must assert "a clear and specific challenge for cause clearly articulating the grounds therefor"; (3) after the challenge

7

for cause is denied by the trial court, the appellant must use a peremptory strike on that juror; (4) all peremptory challenges must be exhausted; (5) when all peremptory challenges are spent, the appellant must request additional peremptory challenges; and (6) the appellant must assert that an objectionable juror sat on the case. *See Jacobs v. State*, 787 S.W.2d 397, 405 (Tex. Crim. App. 1990). Although Reyna used his sixth peremptory strike on the challenged juror and used all ten of his peremptory strikes, his trial counsel did not request additional peremptory challenges or identify an objectionable juror that he was forced to accept. On appeal, Reyna still does not assert that an objectionable juror sat on the case. The failure to identify an objectionable juror who served would be fatal to a complaint that the trial court erred in denying a challenge for cause. It also seriously undermines Reyna's claim that his counsel was ineffective to a degree that negatively affected the outcome of the case.

Although Reyna's trial counsel failed to preserve for review the denial of the challenge for cause, Reyna has not shown that his counsel's overall performance was deficient.[1] His trial counsel filed pretrial and post-trial motions, conducted voir dire and exercised peremptory strikes (including against the objected-to panelist), objected to testimony, and conducted cross-examinations. The evidence included eyewitness testimony and video showing Reyna smashing into the rear of a car that other drivers were able to avoid with ease. Reyna admitted drinking some alcohol before the accident, and uncontroverted testimony showed that Reyna's truck contained more empty beer bottles and cans, although there was no direct testimony that Reyna drank those beers.

---

[1] The record reflects that trial counsel was at least Reyna's third appointed attorney. Previous counsel also filed several pretrial motions, many regarding production or suppression of evidence.

8

Police officers testified that Reyna exhibited multiple signs of intoxication. This evidence supports the jury's finding despite Reyna's trial counsel's challenge to the competency of the field sobriety tests as administered by a rookie police officer. Reyna cites no evidence and makes no argument that the failure to preserve the challenge-for-cause issue led to the seating of an objectionable juror or, more important, that but for trial counsel's failure to preserve that issue there is a reasonable probability that the outcome of the proceeding would have been different. The nature of the evidence indicates strongly that the result of the trial would not have been different if Reyna had requested and received an additional peremptory strike.

## CONCLUSION

Because Reyna has not presented error warranting reversal, we affirm the judgment of the trial court.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: July 1, 2011

Do Not Publish