In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00032-CV


______________________________




DESAI HOSPITALITY, L.L.C., Appellant



V.



RAJESH PATEL, AMARAT PATEL, AND NAVNIT PATEL, Appellees




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 07C0137-102




 



Before Morriss, C.J., Carter and Cornelius,* JJ.


Memorandum Opinion by Justice Cornelius



________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


MEMORANDUM OPINION



 Desai Hospitality, L.L.C., appeals from the trial court's denial of its petition for a temporary
injunction. Because we find that the trial court did not abuse its discretion in denying the petition
for temporary injunction, we affirm the trial court's judgment.

 Desai purchased a tract of land in New Boston from Mr. and Mrs. Harold K. Powell. Desai
purchased the property for the purpose of building a hotel on it. As part of the terms of the purchase,
the Powells agreed to place certain written negative restrictions on the use of other land they owned
adjoining but separate from the parcel Desai purchased. Among the restrictions placed on the
Powells' remaining and adjoining land was a provision that "No part of those lands described on
Exhibit 'A' hereto shall be used for the construction and/or operation of any hotel, motel, or other
overnight lodging facility." After Desai bought its land from the Powells, Rajesh, Amarat, and
Navnit Patel bought a tract from B & C Enterprises that is adjacent to the tract Desai bought, and is
not subject to the restrictions applicable to the Powells' land. The Patels then began construction of
a hotel on that tract. The Patels also bought a separate strip of land from the Powells. That strip is
subject to the restrictions previously placed on the Powells' land. The Patels began to construct a
road on that strip. According to the evidence presented at the hearing on the temporary injunction,
the road will provide access to the Patels' hotel tract, which is not subject to any restrictions, as well
as access to another piece of land still owned by the Powells. The road also connects to the frontage
road to Interstate Highway 30 and will be open for use by the general public.

 Desai filed suit against the Patels for damages and for an injunction prohibiting them from
using the road, claiming that the use of the road would violate the restriction against using the
property for the construction or operation of a hotel or motel.

 The trial court granted Desai a temporary restraining order. A hearing was later held on the
request for a temporary injunction. After hearing evidence and argument of counsel, the trial court
dissolved the temporary restraining order previously issued, denied Desai's request for a temporary
injunction, and reserved the question of damages for future trial. No findings of fact or conclusions
of law were filed. Desai has perfected an interlocutory appeal from the trial court's ruling on the
petition for temporary injunction.

 To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action
against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and
irreparable injury if the injunction is not issued. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204
(Tex. 2002). The decision whether to grant a request for a temporary injunction is within the trial
court's sound discretion. A reviewing court should reverse the trial court's decision only if the trial
court abused that discretion. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). The reviewing
court must not substitute its judgment for the trial court's judgment unless the trial court's action
exceeded the bounds of reasonable discretion. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916,
918 (Tex. 1985).

 In construing a restrictive covenant, the court's primary task is to determine the intent of those
who framed the covenants. Wilmoth v. Wilcox, 734 S.W.2d 656, 658 (Tex. 1987). A reviewing
court should draw all legitimate inferences in favor of the trial court's judgment, Community State
Bank v. New Investment, L.L.C., 38 S.W.3d 256, 258 (Tex. App.--Texarkana 2001, writ dism'd
w.o.j.), and should affirm the judgment on any legal theory supported by the evidence. Lassiter v.
Bliss, 559 S.W.2d 353, 358 (Tex. 1977), overruled on other grounds by Cherne Indus., Inc. v.
Magaallanes, 763 S.W.2d 768 (Tex. 1989); Cmty. State Bank v. New Investment, 38 S.W.3d at 258.

 We find that the trial court did not abuse its discretion in denying the plea for a temporary
injunction. There is ample evidence from which the trial court could have reasonably concluded that
the parties who framed the restrictive covenants did not intend for them to prohibit the construction
or use of a general access road on the strip of land purchased by the Patels from the Powells, and that
the construction and use of the road on that land would not constitute the "construction or operation"
of a hotel or motel. The road is not a private, exclusive access road to the hotel, but will provide
access, not only to the Patels' hotel tract, but also to the Powells' land and to the general public. 
Unlike the situation involved in Highlands Management Co. v. First Interstate Bank of Texas, N.A.,
956 S.W.2d 749 (Tex. App.--Houston [14th Dist.] 1997, writ denied), on which Desai relies, the
road in question will not be a driveway or parking area for a hotel. Nor will the road involved here
be an integral or indispensable part of the operation of the hotel, since there are other areas of access
to the hotel tract. Additionally, there is testimony that Mr. Powell, who adopted the restrictions, told
Rajesh Patel that he was free to build a road on the strip of land in question, but not a hotel or motel. 
Of course, there is conflicting testimony in some respects as to the intent and meaning of the
restrictions, but the trial court in a temporary injunction hearing does not abuse its discretion when
it bases its decision on conflicting evidence. Davis v. Huey, 571 S.W.2d 859 (Tex. 1978); Zmotony
v. Phillips, 529 S.W.2d 760 (Tex. 1975).

 The Patels argue that Desai failed to prove the existence and nature of the restrictive
covenants because it never introduced the written instrument containing the restrictions in evidence
at the hearing. However, it appears there was sufficient oral testimony about the wording and nature
of the restrictions that, in the absence of a "best evidence" objection, adequately proved the
restrictions. Assuming that the restrictions were adequately proven, there is sufficient evidence to
support the trial court's conclusion that the Patels' acts in building and using the road in question here
do not violate the restrictive covenants, and therefore Desai failed to prove it was probably entitled
to the relief sought.

 For the reasons stated, we affirm the judgment of the trial court.


 


 William J. Cornelius

 Justice*


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: June 6, 2007

Date Decided: July 19, 2007



in">            In his first point of error, Grider argues that he suffered egregious harm from the trial court's
failure to instruct the jury on sudden passion. We disagree.
            When on appeal the jury charge is asserted to contain error, we must first determine whether
such error exists. Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996); Garcia v. State, No.
05-03-00001-CR, 2004 Tex. App. LEXIS 4341, at *26 (Tex. App.—Dallas May 13, 2004, pet. filed). 
If there is error, we are to perform one of two error analyses, depending on whether the error was
preserved. Hutch, 922 S.W.2d at 170; see also Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim.
App. 1986). If error was preserved, we are to reverse if "the error is not harmless." Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). If, however, error is not
preserved, we are to reverse only if the error causes "egregious harm." Hutch, 922 S.W.2d at 171;
Almanza, 686 S.W.2d at 171; Garcia, 2004 Tex. App. LEXIS 4341, at *26.
            At trial, Grider did not request an instruction on sudden passion and, in fact, said "no
objection" to the charge as submitted. Error


 was not preserved and, therefore, must have caused
egregious harm to be reversible.
            Egregious harm results from errors that deny the defendant a "fair and impartial trial," "go
to the very basis of the case," "deprive the defendant of a 'valuable right,'" or "vitally affect his
defensive theory." Almanza, 686 S.W.2d at 172. To determine whether there was egregious harm,
we consider (1) the entire jury charge, (2) the evidence on contested issues and the weight of
probative evidence, (3) counsel's argument, and (4) any other relevant information in the record. 
Bailey v. State, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); Batiste v. State, 73 S.W.3d 402, 407
(Tex. App.—Dallas 2002, no pet.). "Egregious harm is a difficult standard to prove and such a
determination must be done on a case-by-case basis." Hutch, 922 S.W.2d at 170; see Batiste, 73
S.W.3d at 407.
            In this case, the jury charge for the guilt/innocence phase of trial included the defensive issue
of self-defense, which was the sole defensive issue and the primary focus of the defense at trial. 
Beyond the burden of proof arguments, only self-defense was mentioned by the defense at trial—in
voir dire, opening argument, and closing argument. In fact, in closing argument, Grider's counsel
said, "This whole case is about self-defense." During the punishment phase of trial, Grider's
testimony touched only on self-defense, not on sudden passion.
            The bulk of the defense evidence attempted to establish self-defense. Grider's evidence
indicated that (1) Cole, the victim, had been pursuing Grider to repay money he had borrowed from
Cole, (2) Grider knew Cole normally carried a gun, (3) Cole initiated the fight resulting in Cole's
death by calling Grider over to Cole's car and then lashing out at Grider and cutting his arm with a
knife, (4) the two men then fought at close quarters in the front seat of Cole's car, (5) Grider was
defending himself during the fight, (6) when Cole quit fighting, Grider exited the car and left the
scene, and (7) Cole's loaded gun was found in Cole's car with him after the incident.



            On the other hand, there is at least some evidence that tends to support the claim of sudden
passion. Grider's written statement to police, which is in evidence, indicated that, during the fight,
Grider went berserk. And there were over seventy cut or stab wounds on Cole's body. At one point
during trial, the State's attorney spoke of a "rage" killing.



            From a more general review of the record, we find evidence suggesting various facts
providing context for the killing. Before the killing, Cole and Grider had an ongoing bad
relationship and "bad blood" between them, Grider had said to third parties that he would "get" or
"kill" Cole, and Grider had obtained a gun. At the time of the killing, both Cole and Grider were
intoxicated. Shortly after the killing, Grider said Cole "deserved to die," and Grider absconded to
California.
            Jenkins v. State, 740 S.W.2d 435 (Tex. Crim. App. 1987), is similar to the case before us in
that they both involve asserted self-defense and a failure to preserve error in failure to instruct on
sudden passion. The Jenkins court determined, among other things, that based on the record and the
defense strategy of focusing on self-defense, there was no egregious harm from the failure to instruct
on sudden passion. Id. On facts analogous to those in the present case, the court found that sudden
passion was not raised by the evidence and seemed swayed by the defendant's focus on self-defense.
            In Batiste, the court found no egregious harm in the trial court's failure to give a reasonable
doubt instruction for the jury's assessment of punishment after a guilty plea. In its analysis, the court
noted that reasonable doubt was not critical or central to the case, that the jury assessed punishment
"far below the maximum punishment available," and that failure to find egregious harm would not
invite the State to fail to request reasonable doubt instructions in the future. Batiste, 73 S.W.3d at
408. From the record before us, we conclude that the issue of sudden passion was not critical or
central to the case, that the jury assessed punishment "far below the maximum punishment
available," and that a failure to find egregious harm here will not endanger future
defendants—because it is within a defendant's power to ask for an instruction on sudden passion
during the punishment phase of trial, if the issue is raised by the evidence. Those factors, too,
suggest there was no egregious harm here.
            Ruiz v. State, 753 S.W.2d 681, 686 (Tex. Crim. App. 1988), focused on the charge and found
egregious harm. Ruiz, charged with murder, was able to present some evidence of sudden passion
arising from an adequate cause. Although the State had the burden to prove Ruiz's actions were not
the result of sudden passion arising from an adequate cause, the jury was not so instructed. In
Ruiz—before the 1994 amendments when negating sudden passion was still an element of the State's
case for proving murder—the court found egregious harm in the possibility that the jury was
confused and misled into ending its deliberations under the incorrect instruction on the law, because
the jury demonstrated, in its communication with the trial court, initially it seriously considered
sudden passion. In Ruiz, sudden passion went to the heart of the case and to the heart of the jury
deliberations. Id. at 684; see also Castillo-Fuentes v. State, 707 S.W.2d 559 (Tex. Crim. App.
1986). We note that, after the 1994 amendments to the Texas Penal Code, negating sudden passion
is not an element of the State's case for murder. Instead, sudden passion, if raised and proven by a
defendant, will lower the first-degree felony of murder to a second-degree felony. See Robinson v.
State, 945 S.W.2d 336, 342 (Tex. App.—Austin 1997, pet. ref'd).


 In the case before us, sudden
passion was not part of the State's case for murder and did not go to the heart of the case or to the
heart of jury deliberations.
            On the same day the Almanza opinion was delivered, the Texas Court of Criminal Appeals
handed down Kucha v. State, 686 S.W.2d 154 (Tex. Crim. App. 1985). Kucha examined the "state
of the evidence" part of the Almanza analysis. In Kucha, the State sought to prove Kucha was a
habitual offender. The jury charge properly instructed the jury on the enhanced range of punishment
if it made a habitual-offender finding, but the charge failed to cover the alternative. Id. at 155. The
court found no egregious error.
The fact of the prior convictions was not a contested issue at all. Appellant's plea of
"not true" only put the State to its proof. Considering that the evidence of the prior
convictions was undisputed, uncontradicted, and seemed to have been taken almost
as a "given" by the parties, we hold that the failure of the court to charge on the range
of punishment if the enhancements were found to be untrue, was not so harmful that
it deprived appellant of a fair and impartial trial. If the evidence of the prior
conviction had not been so strong, or if appellant had contested it in some fashion,
this issue would not be so clearcut. But, from the record it appears that all parties,
including appellant, assumed the fact of the prior conviction and did not dispute its
truth. Also, the prior was proven beyond a reasonable doubt by the State. In light of
the record we hold that the error was not fundamental.
Id. at 156. As in Kucha, the trial court's failure to instruct the jury on Grider's current claim of
sudden passion did not relate to a "contested issue." See also Williams v. State, 851 S.W.2d 282, 289
(Tex. Crim. App. 1993) (no egregious harm where error related to incidental theory of defense).
            This case has none of the elements found by the courts to support an egregious-harm finding. 
In this case, there was a defensive issue submitted and focused on by the defense—self-defense. 
From Grider's perspective at trial, self-defense was central to the case. The issue of sudden passion
appears now, on appeal, as an afterthought, and was at most incidental to the main focus at trial. 
Therefore the lack of an instruction on sudden passion did not deny him a "fair and impartial trial,"
"go to the very basis of the case," "deprive the defendant of a 'valuable right,'" or "vitally affect his
defensive theory." Almanza, 686 S.W.2d at 172.
            We hold that the lack of an instruction on sudden passion—even if it should have been
given—did not cause egregious harm to Grider, and thus overrule his first point of error.
Evidentiary Sufficiency
            In his remaining points of error, Grider asserts the evidence is factually and legally
insufficient. He also argues that the standard by which we review the factual sufficiency of the
evidence is incorrect, because it incorporates "the traditional civil factual sufficiency standard." We
discuss those points together.
            In criminal cases, we are bound to follow the standards for evidentiary sufficiency set by the
Texas Court of Criminal Appeals. Very recently, a reformulated standard for our review of the
factual sufficiency of the evidence was announced by the Texas Court of Criminal Appeals,
remarkably, using the same logic asserted by counsel for Grider.
The Texas Supreme Court recently dealt with the issue of a factual-sufficiency
review when the burden of proof at trial was higher than preponderance of the
evidence. In In re C.H., the court adopted a factual-sufficiency standard of review
for cases in which the burden of proof is clear and convincing evidence. The court
stated:
 
We conclude that the burden of proof at trial necessarily affects appellate review of the evidence. Under traditional factual sufficiency standards, a court
determines if a finding is so against the great weight and preponderance of the
evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. But that standard is inadequate when evidence is more than a
preponderance (more likely than not) but is not clear and convincing. As a
matter of logic, a finding that must be based on clear and convincing evidence
cannot be viewed on appeal the same as one that may be sustained on a mere
preponderance.
 In re C.H., 89 S.W.3d 17, 25, 45 Tex. Sup. Ct. J. 1000 (Tex. 2002) (citations
omitted). We agree with the Supreme Court that the burden of proof at trial dictates
the standard of appellate review.
 
We will attempt to resolve some of the confusion created by the standard that has
developed since Clewis by: 1) linking the burden of proof at trial to the standard of
review and 2) avoiding language suggestive of a preponderance-of-the-evidence
burden of proof. This does not alter the standards elucidated since Clewis, rather it
serves only to synthesize the ideas each decision has provided and to acknowledge
the necessity for appellate courts to consider the burden of proof at trial when
reviewing the factual sufficiency of the evidence. There is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral
light, was a jury rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient. First, when
considered by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that
the beyond-a-reasonable-doubt standard could not have been met, so the guilty
verdict should not stand.
Zuniga  v.  State,  No.  539-02,  2004  Tex.  Crim.  App.  LEXIS  668,  at  *18–20  (Tex.  Crim. App.
Apr. 21, 2004) (footnote omitted). Grider is correct to the extent that the factual-sufficiency review
should  be  different  than  the  standard  set  out  in  the  past.  We  are  bound  by  and  apply  the
factual-sufficiency standard announced in Zuniga.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found  the  essential  elements  of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga, 2004 Tex. Crim.
App. LEXIS 668, at *20. There are two ways in which we may find the evidence to be factually
insufficient. First, if the evidence supporting the verdict, considered alone, is too weak to support
the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. 
Id. Second, if—when we weigh the evidence supporting and contravening the conviction—we
conclude that the contrary evidence is strong enough that the State could not have met its burden of
proof, we must find the evidence insufficient. Id. "Stated another way, evidence supporting guilt
can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable doubt
standard." Id. If the evidence is factually insufficient, then we must reverse the judgment and
remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Certainly this record contains evidence tending to support and to undermine a guilty verdict. 
The jury is entitled to believe certain evidence and to disbelieve other evidence. See Bustamante v.
State, 106 S.W.3d 738, 741 (Tex. Crim. App. 2003). The drunken Cole, in possession of a loaded
gun somewhere near him but not in his hand, from a sitting position in his car, lashed out at the
drunken Grider with a knife and cut him once on the arm. Grider "defended" by cutting or stabbing
Cole over seventy times. We conclude both that the evidence supporting the verdict, considered
alone, is strong enough to support the jury's finding of guilt beyond a reasonable doubt, and
that—when we weigh the evidence supporting and contravening the conviction—the contrary
evidence is not so strong that the State could not have met its burden of proof. From our review of
the record, referenced above and elsewhere in this opinion, we hold the evidence was both legally
and factually sufficient to support the judgment.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          May 7, 2004
Date Decided:             June 8, 2004

Publish