Affirmed in Part; Reversed and Remanded in
Part; and Majority and Dissenting Opinions filed August 31, 2010.

 

In
The

Fourteenth
Court of Appeals



NO.  14-09-00319-CR



Jose Armando
DeLeon, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 272nd District Court

Brazos County, Texas

Trial Court
Cause No.  07-02731-CRF-272



 

MAJORITY OPINION 

Appellant, Jose Armando DeLeon, appeals from his
conviction for indecency with a child by sexual contact.  A jury found
appellant guilty and assessed punishment at fourteen years in prison.  In two
issues on appeal, appellant contends that he received ineffective assistance of
counsel in the guilt/innocence and punishment phases of the trial.  We affirm
appellant’s conviction; however, finding that appellant received ineffective
assistance of counsel in the punishment phase, we remand for a new punishment
proceeding.

I.  Background

Complainant, a female less than seventeen years old, made
an outcry statement to her mother in January 2007 that appellant, the uncle of
her mother by marriage, had inappropriately touched her on several occasions.  At
trial, complainant testified that the first incident with appellant occurred in
October 2004 when the family was living in Tyler, Texas, and she was in the
fourth grade.  Her brother had just been born, and her mother was in the
hospital.  Appellant, his wife, and youngest daughter travelled from their home
in Bryan, Texas to see the baby.  Complainant testified that appellant rubbed
her “upper leg” with his hand while she was sitting on the couch watching
television in the living room.  The only other people in the apartment at the
time were her younger sister and appellant’s daughter, both of whom were in
different rooms.  She recalled that she did not move or say anything because
she was frightened.  When he stopped, he got up from the couch, and nothing
else happened on this occasion.

The next incident occurred during the fall of her fifth
grade year, after her family had moved back to Bryan in 2005.  She was at appellant’s
house after school, sitting on a couch in the living room watching television.  Appellant
sat next to her and touched her above her clothing on her “bottom front area”
or “private part” and then told her not to tell.  Subsequently, appellant
continued to touch her private part “every chance that he got,” on a couch in
the living room, while her sister and his daughter were in his daughter’s room. 
Complainant further explained that anyone in appellant’s daughter’s bedroom
could not see her and appellant on the couch.  The incidents continued in appellant’s
house on the couch through the fifth grade and into the sixth grade in 2006.  Complainant
stated that appellant became “worse” during the summer of 2006, and he would unzip
her shorts and “stick his hands in” her shorts, although not beneath her
underwear.  She also testified that he repeated a threat:  “One day I’ll get
you good.”  The last touching occurred the week of her twelfth birthday in
December 2006.  Soon thereafter, in January 2007, complainant told her mother
about appellant’s touching her.

Complainant said that she didn’t understand why
appellant was touching her, and it made her angry.  She further stated that
during this time period she argued with her mother more than she had previously. 
On cross-examination, complainant acknowledged that she did not tell anyone
except the prosecutor that appellant had touched her inside her clothing and
made threats to her.  

Complainant’s mother recounted the family’s move in
2002 from Bryan to Tyler and return to Bryan in 2005.  After their return, both
she and her husband were at work when school ended for her daughters, so they
arranged for extended family to pick them up from school and either drop them
off at the Boys and Girls Club or appellant’s house.  She started to notice
problems in complainant’s behavior in 2005, during the fall of her fifth grade year. 
Complainant became angry and disobedient at home and in public.  Around
December 2005, complainant’s behavior was so rebellious that she was suspended
from the Boys and Girls Club.  The mother further testified that when she was complainant’s
age, she had acted similarly as a result of having been molested.  Based on her
own experience, she came to suspect that complainant may have also been
molested.  She therefore began to question complainant about possible
molestation.  Over the next year, complainant’s mother made this inquiry about
“half a dozen” times.  By December of 2006, complainant was having so much
difficulty with her family that she was kept at home through the holidays
instead of being babysat outside of the home.

Detective Loup of the Bryan Police Department, the
primary investigator in Bryan for sex crimes and lead detective assigned to
this investigation, testified regarding his five years experience working on
sex crimes as well as his specialized training and education.  He described
this case as a delayed outcry, which he said was common for child victims.  Further,
he noted that there was no need to look for physical evidence since this was an
indecent contact case, and nothing suggested otherwise.  The first step in the
investigation was to have the complainant interviewed by a forensic interviewer
at Scotty’s House, a child advocacy center.  After observing that interview, Loup
interviewed several other people, including appellant via interpreter, one of
appellant’s daughters, and complainant’s parents.  In his interview, appellant
denied the accusations against him.  Loup stated that based on his
investigation, the last offense occurred at appellant’s home and was committed
by appellant.

Cheryl Mikeska, a licensed professional counselor,
testified that she has fifteen years experience working with children.  She has
counseled over a hundred children who had been sexually abused.  Her education
includes a bachelor’s degree in psychology and a master’s degree in counselor
education.  She described the symptoms and behavioral characteristics of sexual
abuse victims.  She further described the symptoms and behavior complainant had
exhibited.  Although she acknowledged that complainant’s behavior could have been
caused by something other than sexual abuse, she opined that there were clear
indicators of her having been sexually abused.

The defense called appellant’s youngest daughter as a
witness.  She is a second cousin to complainant and was seventeen years old at
the time of trial.  She recounted the trip to Tyler to visit complainant’s
family when the baby was born.   She only recalled being in complainant’s
parent’s bedroom when the baby was in the apartment and did not notice any
unusual behavior from complainant.  Appellant’s daughter also testified to her
long history of babysitting complainant and siblings.  She disputed
complainant’s description of her home and described her bedroom as being only “two
steps” from the living room, close enough that she could see people sitting on
the couch from her bedroom door.  She testified that she was always around
complainant when she was at her house and that complainant was never alone with
appellant.  She asserted that complainant had accused appellant because she
wanted attention from her parents.  She explained that complainant was treated
worse than her other siblings because she had a different father.  Finally, she
claimed that complainant would lie to her parents and her on occasion about
“any other little thing.”

At the punishment phase of the trial, defense counsel
opened with a plea to the jury to recommend probation for appellant.  In his
opening statement, he also mentioned that appellant was a legal resident of the
United States, coming originally from Mexico.  The defense then called Charlie
Russ, a Brazos County probation officer.  He described the treatment for sex
offenders on probation and the protections in place for the community against
the potential danger posed by sex offenders on probation.  Also, he testified
as to the greater availability of treatment to those on probation versus those jailed
or on parole.  On cross-examination, the prosecutor elicited considerable testimony
from Russ regarding his opinions on the psychology of sex offenders, including
his conclusion that:  “If you want to protect the public, then you put them in
a situation where they can’t have access to children.”

The jury convicted appellant of indecency with a
child by sexual contact and assessed punishment at fourteen years’ confinement.

II.  Standards of Review

In his first issue, appellant contends that he was
denied effective assistance of counsel during the guilt/innocence phase of
trial.  In his second issue, appellant contends that he was denied effective
assistance during the punishment phase.  The Sixth Amendment to the United
States Constitution guarantees the right to reasonably effective assistance of
counsel in criminal prosecutions.  U.S. Const. amend. VI; McMann v. Richardson,
397 U.S. 759, 771 n.14 (1970).  In reviewing an ineffective assistance claim,
an appellate court “must indulge a strong presumption that counsel’s conduct
[fell] within the wide range of reasonable professional assistance; that is,
[appellant] must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.”  Strickland v. Washington,
466 U.S. 668, 689 (1984).  Under the two‑pronged Strickland test, in
order to demonstrate ineffective assistance of counsel, a defendant must first
show that counsel=s
performance was deficient, i.e., that his assistance fell below an
objective standard of reasonableness; second, a defendant must affirmatively
prove prejudice by showing a reasonable probability that, but for counsel=s unprofessional errors,
the result of the proceeding would have been different.  Thompson v.  State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Id.  at 813.  Appellant bears the burden of
proving by a preponderance of the evidence that counsel was ineffective.  Id. 
In the majority of cases, the record on direct appeal is simply undeveloped and
cannot adequately reflect the alleged failings of trial counsel.  Jackson v.
State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).  This is particularly
true when the alleged deficiencies are matters of omission and not of
commission revealed in the record.  Id.  A proper record is best
developed in a habeas corpus proceeding or in a motion for new trial hearing.  Jensen
v. State, 66 S.W.3d 528, 542 (Tex.  App.CHouston
[14th Dist.] 2002, pet. ref=d). 
To establish ineffective assistance of counsel based on a failure to object,
appellant must demonstrate that the trial court would have committed harmful
error in overruling the objection if trial counsel had objected.  Alexander
v. State, 282 S.W.3d 701, 705 (Tex. App.—Houston [14th Dist.] 2009, pet.
ref’d).

III.  Counsel’s Performance During Guilt/Innocence Phase

As stated, appellant asserts in his first issue that he
received ineffective assistance during the guilt/innocence phase of trial. 
Specifically, he contends that counsel was deficient in that he failed to
object to:  (1) complainant’s mother’s testimony that she (the mother) had been
molested as a child; (2) the mother’s testimony that complainant exhibited
symptoms of having been molested; (3) the expert testimony of Cheryl Mikeska
that complainant was sexually abused; and (4) the testimony of Detective Loup
that appellant had indecent contact with complainant.  

A.  Mother’s Testimony Regarding Prior Abuse

            Appellant first complains
about complainant’s mother’s testimony that she was sexually abused as a
child.  Specifically, when the prosecutor asked the mother why she felt
something was “going on” with complainant, the mother responded that
complainant was acting the same way that the mother had when she [the mother]
was molested as a child.  In his brief, appellant contends that this testimony
was irrelevant because it did not involve either complainant or appellant, or
alternatively, that it was prejudicial because it “was offered to inflame the
passion and sympathy of the jury to both the witness and her daughter.”  He
further asserts that trial counsel’s performance was deficient because he did not
object to this testimony.  However, even assuming that appellant is correct
regarding the admissibility of this evidence, the record is silent as to why
counsel did not object.  There may have been strategic reasons for counsel to decline
to object even to inadmissible evidence.  See Thompson, 9 S.W.3d at 814
(declining to find that representation was either effective or ineffective
given lack of explanation in the record for failure to object to hearsay); McKinny
v. State, 76 S.W.3d 463, 473-74 (Tex. App.—Houston [1st Dist.] 2002, no
pet.) (discussing various reasons why criminal defense counsel might
strategically decide not to object to inadmissible evidence).[1]  Accordingly,
we cannot say on this record that counsel’s performance was deficient because he
failed to object to the mother’s testimony that she had been molested as a
child.

B.  Mother’s Opinion Testimony

            Appellant next
contends that counsel should have objected to the mother’s testimony that
complainant’s behavioral problems “made sense” after the mother learned of the
molestation of complainant.  Appellant specifically asserts that this testimony
was inadmissible because the mother was not qualified as an expert on such
matters.  However, it does not appear from the record that this testimony was
presented as expert testimony; instead it appears to have been only lay opinion
evidence based on the mother’s own observations and prior experience.  See
generally Tex. Rule Evid. 701; Bargas v. State, 252 S.W.3d 876,
897-98 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Appellant offers no
argument as to whether this evidence would have been properly admitted as lay
opinion evidence.  Accordingly, he has not met his burden to show that counsel’s
performance was deficient under the first prong of Strickland.  See Alexander,
282 S.W.3d at 705.

C.  Expert’s Testimony

Appellant next insists that counsel should have
objected to Cheryl Mikeska’s expert opinion that complainant had been sexually
assaulted.  Generally, expert testimony is admissible if it assists the jury in
intelligently determining an issue but does not decide the issue for the jury.  See
Duckett v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), disapproved
on other grounds, Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App.
1993); Drake v. State, 123 S.W.3d 596, 606 (Tex. App.—Houston [14th
Dist.] 2003, pet. ref’d).  Expert testimony that identifies certain
physical or behavioral manifestations of sexual abuse and relates those
characteristics to the complainant is admissible even if the complainant has
not been impeached.  Yount v. State, 872 S.W.2d 706, 708-09 (Tex. Crim.
App. 1993).  However, “[e]xpert testimony does not assist the jury if it
constitutes ‘a direct opinion on the truthfulness’ of a child complainant’s
allegations.”  Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997)
(quoting Yount, 872 S.W.2d at 708).

In her testimony, Mikeska highlighted certain
behavioral characteristics commonly exhibited by child abuse victims, including
difficulty sleeping and eating, low self esteem, depression, poor interpersonal
relationships, and isolation.  She further spoke specifically regarding certain
of those characteristics displayed by complainant.  The following exchange then
occurred between the prosecutor and Mikeska:

Q.  And when you have these symptoms, what is your
impression or diagnosis of [complainant]?

A.  My impression with [complainant], particularly, is that
there are clear indicators of her having been sexually abused.

Contrary to appellant’s suggestion, this testimony
did not offer an ultimate conclusion regarding complainant’s truthfulness in
this case.  Mikeska merely stated that complainant exhibited the behavioral
characteristics of a child who had been sexually abused.  Expert testimony that
a child exhibits behavioral characteristics that have been empirically shown to
be common among children who have been abused has been held admissible in
similar cases.  See Perez v. State, 113 S.W.3d 819, 832 (Tex.
App.—Austin 2003, pet. ref’d) (citing Hitt v. State, 53 S.W.3d 697, 707
(Tex. App.—Austin 2001, pet. ref’d), Vasquez v. State, 975 S.W.2d 415,
417 (Tex. App.—Austin 1998, pet. ref’d), Yount, 872 S.W.2d at 709, and Cohn,
849 S.W.2d at 819-21), overruled on other grounds, Taylor v. State,
268 S.W.3d 571, 578 (Tex. Crim. App. 2008); see also Jiron v. State,
No. 01-07-00441-CR, 2008 WL 1904068, at *3 (Tex. App.—Houston [1st Dist.] May
01, 2008, no pet.) (citing Perez).  Accordingly, counsel was not
ineffective for failing to object to Mikeska’s testimony.  See, e.g., Ex
parte White, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding counsel was
not ineffective for failing to object to admissible evidence).

D.  Detective’s Testimony

            Next, appellant
contends that his counsel was ineffective for failing to object to Detective
Loup’s testimony, which “constituted an impermissible opinion as to the guilt
or innocence of an individual.”  The expression of guilt or innocence in any
case is a conclusion to be reached by the jury based upon the instructions
given them in the court’s charge, coupled with the evidence admitted by the
judge through the course of the trial.  Taylor v. State, 774 S.W.2d 31,
34 (Tex. App.—Houston [14th Dist.] 1989, pet. ref’d).  No witness is competent
to voice an opinion as to guilt or innocence.  Boyde v. State, 513
S.W.2d 588, 590 (Tex. Crim. App. 1974).  After explaining how a typical sexual
assault of a child investigation is conducted, including the interviewing of
the child, Loup responded to the prosecutor’s additional questioning as
follows:

Q.  And in this case, based upon your investigation, did
you determine where the indecency offense had occurred?

A.  Yes.  The last offense occurred at . . . the suspect’s
home.  It’s in Bryan, Brazos County.

Q.  Who, based upon your investigation, was the suspect or
the person who committed this indecent contact with [complainant]?

A.  Jose DeLeon.

The prosecutor’s questioning was improper.  The
prosecutor not only asked Detective Loup who he developed as a suspect during
the course of the investigation, he also asked who committed the offenses and
where the last offense occurred.  See Huffman v. State, 691 S.W.2d 726,
730 (Tex. App.—Austin 1985, no pet.) (finding court erred in permitting
prosecutor to ask deputy sheriff if he felt crime had been committed where
appellant claimed he shot victim in self defense); see also Lovell v.
State, No. 12-04-00291-CR, 2006 WL 1916950, at *3 (Tex. App.—Tyler Nov. 22,
2006, pet. ref’d) (mem. op., not designated for publication) (finding trial
court erred in permitting prosecutor to ask police officer whether, based upon
his investigation, officer believed defendant had “violated the law,” as this
was merely an expression of opinion that officer believed defendant was
guilty).

However, even assuming that counsel’s performance fell
below an objective standard of reasonableness due to his failure to object to
this testimony, in order to be entitled to a reversal for ineffective
assistance of counsel under Strickland, appellant must further demonstrate
that but for counsel’s error, the result of the proceeding would have been different. 
See Thompson, 9 S.W.3d at 812.  We begin our analysis of the second Strickland
prong by noting that Detective Loup did not directly state that he believed appellant
was guilty; he merely indicated that his investigation pointed to appellant as
the perpetrator.  Loup was the first witness in the case, and apparently the
prosecutor simply wanted to establish the circumstances under which appellant
was arrested, i.e., to “set the scene” for the witnesses to come.  In
addition, the prosecutor’s questioning was so garbled that it was unlikely to
have left a clear impression regarding Loup’s personal opinions on the matter. 
Furthermore, the prosecutor did not continue the line of questioning or
emphasize it in any way; he did not even mention it during closing argument.  Instead,
the prosecutor’s primary focus in both the case-in-chief and closing argument
was on complainant’s credibility.  For these reasons, we decline to find
ineffective assistance of counsel under Strickland based on this one
isolated failure to object to potentially inadmissible testimony.  See
generally Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)
(explaining that isolated failures to object to improper evidence generally do
not constitute ineffective assistance of counsel); Moore v. State, 4
S.W.3d 269, 275 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (same).  Finding
none of appellant’s assertions of ineffective assistance in the guilt-innocence
phase to have merit, we overrule appellant’s first issue.

IV.  Counsel’s Performance During Punishment Phase

In his second issue, appellant contends that he
received ineffective assistance of counsel during the punishment phase of
trial.  Specifically, he alleges that counsel was ineffective for (1) injecting
national origin by pointing out that he is a legal resident in the United
States from Mexico; (2) calling a probation officer as an expert witness who then
gave damaging testimony; and (3) failing to object to the prosecutor’s
questions which elicited the damaging testimony.  We will begin by reviewing
the testimony of the probation officer.

During the punishment phase, appellant called Charlie
Russ, a Brazos County probation officer, to the stand.  On direct examination,
Russ testified that when sex offenders are placed on probation, they receive
treatment to learn to control their behavior, including “on how to push away
any type of temptations or desires,” and “to remove themselves from high-risk
situations.”  He further stated that the hope was that the offender in question
would “gain enough information to where they will apply it to the rest of their
life and they will have the necessary abilities to remove themselves from
situations that could trigger sexual behavior. It is just—it is education, and
the importance of it is to prevent further sexual behavior.”  Additionally, on
re-direct examination, Russ explained that a sex offender on probation would definitely
receive counseling and that within the prison system, as opposed to the
probation system, offenders typically do not receive the same level of
counseling.

On cross-examination by the prosecutor, however, Russ
testified as follows:

Q.  If in a particular case the facts were to show that
what a person was convicted for was a situation where either through
opportunity or through planning it was in a position where nobody else would
see it, it was secretive; unless a child talked nobody would know.  Is that
risk still there if the people around aren’t trying to prevent that?

A.  Sure. That risk will always be there. The risk will
never disappear. Regardless if they get alone with the child, regardless if
there are other adults in the house, the risk remains.  [¶]  The risk is in the
brain.  It’s up here.  It’s the desire.  You can put a person in prison, you
can do anything you want to them. You cannot get rid of the deviancy, the
sexual desire, in any offender.  [¶]  Sexual behavior is natural, but when it
becomes deviant, that is when we get worried.  Once it is with them, it doesn’t
disappear. That is the purpose of treatment.  [¶]  Punishment—I don’t care what
kind of punishment you give somebody, it never forces the issues out of their
brain.  They will always have some kind of deviant sexual desire, and they will
always be at risk to the community.  That is just the way it works.

He subsequently expanded on this line of testimony on
re-cross: 

Q.  Now rehabilitation of sex offenders:  Are they ever
rehabilitated to the point where the risk is gone?

A.  No.  Absolutely not.  The risk will always be there. It
may be minimized or lessened, but the risk will always remain because we don’t
know—I don’t know what anybody here is thinking. We can never assume that we
know what a sex offender is thinking.  [¶]  The risk is this: they were sex
offenders before they committed the offense.  So we don’t know what he is
thinking, what they’re planning.  We can give them treatment, we can do all the
things that are required by law; but we can’t see up here, so we can never
truly predict what is going to happen from day one to day two.  [¶]  You have
got to assume all the risk because you have heard story after story, “I never
thought he would do this; I never thought my grandfather would do this; I never
thought my dad would do this.”  [¶]  So you never, ever push out the risk.  You
always assume the risk is great.  As long as you assume the risk is great, then
hopefully that is going to create enough protection to prevent other children
from being impacted one way or the other.  You just don’t know.  [¶]  I can
have guys that do everything perfectly, but up here they’re still having sexual
fantasies of molesting two-year-old girls or two-year-old boys.  Just because
you succeed well in probation does not remove the risk.

Russ went on to list various problems he’s
encountered as a probation officer dealing with sex offenders.  For example, he
described one particular 75 year-old probationer who had a room in his home
with “little girl dresses and some dolls and a little bed made up for them.” 
He further described how some offenders on probation have “toys and video games
so they can invite the neighbors’ little kids to come over.”  He concluded that: 
“If you want to protect the public, then you put them in a situation where they
can’t have access to children.”

This testimony was particularly damaging to appellant’s
prospects for probation or a short prison sentence.  Appellant contends that he
received ineffective assistance of counsel because counsel failed to object to
this evidence and, in fact, presented Russ as a witness.  Generally, when a
defendant contends that his or her counsel was ineffective because he or she
failed to object to evidence, the defendant must establish that such evidence
was in fact inadmissible.  See Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim.
App. 2002).  There has been no showing here, either at trial or on motion for
new trial, as to whether Russ was qualified to give expert opinion testimony on
these matters.  However, whether or not Russ was qualified, appellant’s trial
counsel was deficient in failing to object to the highly inflammatory testimony
and for calling Russ to the stand in the first place.  See Mares v. State,
52 S.W.3d 886, 892-93 (Tex. App.—San Antonio 2001, pet. ref’d) (holding counsel
was deficient where counsel called probation officer as witness and then failed
to object when she opined that a person in the defendant’s situation would not
make a good candidate for probation); Jackson v. State, 857 S.W.2d 678,
683 (Tex. App.—Houston [14th Dist.] 1993, pet. ref’d) (finding counsel was
deficient for, among other things, calling Child Protective Services caseworker
as witness who then “raised questions” concerning possible child abuse); see
also Ex parte Hill, 863 S.W.2d 488, 489 (Tex. Crim. App. 1993) (holding
counsel was deficient for calling alibi witness who had already pleaded guilty
to same crime).  Counsel should have known how Russ was going to testify on
these matters.  There could have been no strategic reason for producing and
permitting such damning testimony.  See Andrews v. State, 159 S.W.3d 98,
102 (Tex. Crim. App. 2005) (“[W]hen no reasonable trial strategy could justify
the trial counsel’s conduct, counsel’s performance falls below an objective
standard of reasonableness as a matter of law, regardless of whether the record
adequately reflects the trial counsel’s subjective reasons for acting as she
did.”).[2]

Turning to the second Strickland prong, it is
difficult to assess exactly what impact the testimony had on the jury.  Without
question, indecency with a child is a heinous offense, and juries have
significant latitude in the punishment they may assess for such a crime. 
However, given the nature of this testimony and the emphasis placed upon it
(Russ’s testimony took up 36 record pages of 71 total pages of testimony in the
punishment phase, and he was the only witness who could be considered an expert
presented during that phase), it is likely that it had an effect on the jury’s
assessment of punishment.  In other words, there is a reasonable probability, i.e.,
one sufficient to undermine confidence in the outcome, that the result of the
proceeding would have been different but for counsel’s deficient performance.  See
Andrews, 159 S.W.3d at 102.  The jury declined to recommend probation, as appellant
had requested, and instead assessed punishment of fourteen years imprisonment
out of a range of between two years and twenty years.  See Tex. Penal
Code §§ 12.33(a) (providing punishment range for second degree felonies),
21.11(a)(1) (classifying indecency with a child by contact as a second degree
felony).[3] 
Accordingly, we find that trial counsel was ineffective, and appellant is therefore
entitled to a new hearing on punishment.  See Mares, 52 S.W.3d at 892-93
(remanding for new punishment phase where counsel called witness who gave
damaging testimony regarding defendant’s candidacy for probation and failed to
object to that testimony).

Because we find that counsel was ineffective for
presenting Russ as a witness and failing to object to the prosecutor’s line of
questions, we need not consider appellant’s other punishment phase argument, i.e.,
that counsel was ineffective for raising the issue of appellant’s national
origin.  We sustain appellant’s second issue.

We affirm appellant’s conviction; however, finding
that appellant received ineffective assistance of counsel in the punishment
phase, we remand for a new punishment proceeding

 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel
consists of Chief Justice Hedges and Justices Anderson and Christopher.(J.
Christopher dissenting.)

 Publish
— Tex.  R.  App.  P.  47.2(b).









[1]
For example, during his cross-examination, trial counsel pressed the mother on
the fact that prior to complainant’s outcry statement, the mother was
frequently asking complainant whether someone had been “touching” her.  Counsel
may have intended to suggest that the mother’s own prior experience may have
predisposed her to see symptoms in her daughter and may have lead her to cause
complainant to fabricate her outcry statement.





[2]
The dissent suggests that we are holding that “no competent attorney would have
called a probation officer as a witness during the punishment phase of trial”
and that doing so would be ineffective assistance as a matter of law.  This
assertion is incorrect.  As indicated in the text above, defense counsel either
knew or should have known how his own witness was going to testify on the very
matter on which he called the witness to testify.  Under the facts of this
case, defense counsel was ineffective for producing this witness and failing to
object to his damaging testimony.  





[3]
The dissent states that our determination of prejudice appears to rest on two
grounds:  the volume of Russ’s testimony relative to the entirety of the
punishment phase record and the jury’s stiff punishment assessment.  This
assertion is incorrect.  The primary basis for our determination of prejudice,
as set forth in the text above, is the damaging nature of Russ’s testimony. 
The comparative volume of that testimony and the severity of the punishment are
only additional factors that support the conclusion that the testimony was in
fact quite damaging.  We certainly do not suggest that a jury’s assessment of a
long prison sentence for a sexual offender is by itself indicative of prejudice
from ineffective assistance of counsel.  Juries are empowered to punish such
offenders as they deem justified; however, it is the role of the judiciary to
ensure the basic fairness of the proceedings leading to such punishment.